J-S62006-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHRISTOPHER LYNN SCHENCK | |
| Appellant | No. 1702 MDA 2015 |

Appeal from the Judgment of Sentence June 30, 2015
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s): CP-41-CR-0000452-2010
CP-41-CR-0001148-2013
CP-41-CR-0001294-2010

BEFORE:  GANTMAN, P.J., DUBOW, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                    **FILED AUGUST 30, 2016**

A jury found Christopher Schenck guilty of aggravated assault on a three-year-old child, graded as a first degree felony, and endangering the welfare of a child, graded as a third degree felony.[1]  On June 30, 2015, the trial court sentenced Schenck to an aggregate term of 11-27 years' imprisonment.  Schenck filed timely post-sentence motions, which the court denied on September 3, 2015.  On October 2, 2015, Schenck filed a timely notice of direct appeal.  Both Schenck and the trial court complied with Pa.R.A.P. 1925.  We affirm.

---

[1] 18 Pa.C.S. §§ 2702(a)(1) and 4304(a)(1), respectively.  The jury also found Schenck guilty of simple assault and reckless endangerment, but the court merged Schenck's sentences on these charges with his sentences for aggravated assault and endangering the welfare of a child.

Schenck raises three issues in this appeal:

1. Whether the evidence presented at trial was sufficient to prove beyond a reasonable doubt that [Schenck] caused the injuries to the victim, to wit, extensive bruising and a subdural hematoma?

2. Whether the evidence presented at trial was sufficient to prove beyond a reasonable doubt that the injuries to the victim occurred during the period of time wherein the victim was alleged to be in the sole custody of [Schenck]?

3. Whether the jury's verdict of guilty beyond a reasonable doubt as to count 1 (aggravated assault), count 2 (endangering the welfare of children), count 3 (simple assault of a child), and count 4 (recklessly endangering another person), was contrary to the weight of evidence presented at trial?

Brief For Appellant, at 6.

Schenck's first two arguments challenge the sufficiency of the evidence. When examining a challenge to the sufficiency of evidence, our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire

> record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super.2011).

The trial court accurately summarized the evidence of record in its opinion denying post-sentence motions:

> There were no eyewitnesses to the assault on the minor victim. The Commonwealth's entire case was based on circumstantial evidence.
>
> On June 2, 2013, Officer Brian Fioretti of the Tiadaghton Police Department responded to an apartment in Jersey Shore for an unresponsive three year old male. Upon the officer's arrival to the scene, he found the victim unresponsive on the floor with no clothes on. The officer observed multiple bruises all over the victim's body including his legs, thighs, face, buttocks, back, arms and neck. He also observed fresh bruises on the child's right cheek and eye.
>
> Officer Fioretti was advised by [Schenck], who was the caretaker of the child, that approximately an hour and a half earlier, the child was in the tub and had slipped and had hit his head. [Schenck] explained that this incident is what caused the bruises to the eye and face. The other bruises, according to [Schenck], were caused when the child fell while engaged in other activities such as fishing. The mother of the child, who was living with [Schenck] and the victim, had left the apartment for work earlier that morning at approximately 5:30 a.m. The child was sleeping soundly and the evening before when she gave him a bath, he did not have nearly as many of the bruises that were found on his back, face, shoulders, legs, thighs and head on June 2, 2013.
>
> According to the mother, [Schenck] was the sole caretaker of her son. They did not use physical discipline on him. On the morning of the incident, [Schenck] contacted her and told her that her son had fallen in the tub and hit his cheek. [Schenck] explained that the child had placed a cup in the kitchen sink and was running from the kitchen into the living room when he

- 3 -

tripped and fell over the threshold strip onto his face. Initially, the child was okay but shortly afterwards he became unconscious and unresponsive.

On the morning of the incident, the downstairs neighbors heard noises at approximately 7:00 a.m. which woke them up. The noises went on for approximately one and a half hours at different intervals. Eventually, they heard a loud 'thud' like a 'refrigerator' falling. After that, they heard some whimpering and then 'nothing else.'

The child was eventually flown from Jersey Shore Hospital to Geisinger Medical Center in Danville, Pennsylvania. He was examined by numerous physicians and eventually placed in the Intensive Care Unit. Dr. Paul Bellino of the Pediatric Intensive Care Unit and a specialist in child abuse testified that the injuries were not consistent with the mechanisms which [Schenck] indicated and that they were consistent with physical abuse. He observed countless contusions on the victim with the majority of the contusions being new along with some older contusions. He testified that there was swelling on the victim's brain from a subdural hematoma, which most likely caused him to be unconscious, if not immediately, shortly after the injury occurred. He testified that the majority of the contusions were fresh contusions and not old contusions. He testified that these injuries are 'definitely consistent with that of physical abuse.' He ruled out any other type of condition which could have caused these injuries. He also ruled out that the injuries could have been self-inflicted by the victim or caused by the falling on the carpet as apparently explained by [Schenck].

Opinion and Order Denying Post-Sentence Motions, at 2-4. The trial court

provided additional details about the evidence in its Pa.R.A.P. 1925 opinion:

Leigh McCarty, the victim's mother, testified that during the date in question, she was living in her second floor apartment with [Schenck] and her son. When she was at work, her son was watched by [Schenck].

On Saturday night, the night before the victim was taken to the hospital and his very serious injuries were discovered, she gave him a bath and put him to bed at approximately 10 or 10:30 p.m. The next morning she got up at around 5:00 a.m. and left

the apartment to go to work. When she left, the only two people in the apartment were [Schenck] and her son.

Ms. McCarty was shown numerous photographs of injuries to the child. She testified that the vast majority of them, and all of the very serious injuries, did not appear on her son when she gave them the bath the night before but were present when she next saw him in the hospital late Sunday afternoon or early evening. While she was at work, [Schenck] was 'watching' the minor child. [Schenck] had been doing this a while after he initially offered to take care of the child.

Following her becoming aware of the injuries to her son, she confronted [Schenck]. [Schenck] specifically stated that the child suffered the injuries because he tripped coming from the kitchen into the living room and fell and hit his head. In fact, [Schenck] spoke with Brian Fioretti of the Tiadaghton Valley Regional Police Department admitting that he was watching the minor child and explained that the bruising and injuries were either caused by some sort of medical condition or when the child went out to the kitchen, came back and tripped through the doorway.

[Schenck] told somewhat of a different story to Brady Breon, a paramedic. [Schenck] told Mr. Breon that he was watching the child and that the child had fallen earlier in the day in the bathtub and most recently tripped over the carpet strip and fell and stuck his head. This history was also provided by the [Schenck] to medical personnel at Geisinger Medical Center.

Pa.R.A.P. 1925 Opinion, at 3-4.

In his first argument, Schenck contends that the evidence is insufficient to demonstrate that he caused the victim's injuries. We disagree. Construed in the light most favorable to the Commonwealth, the evidence clearly demonstrated that Schenck caused the victim's injuries. The trial court correctly reasoned:

[T]here was clearly sufficient evidence to prove that it was [Schenck] who caused the injuries to the minor child. The minor

child did not have the injuries prior to being in [Schenck]'s sole care. The downstairs neighbors heard activity in the apartment consistent with an assault of the minor child. [Schenck]'s explanation as to how the injuries occurred was inconsistent and, in fact, contrary to the physical findings, and the expert testimony regarding the mechanism of the injuries was that of physical abuse. Indeed, the evidence was overwhelming against [Schenck]. The child certainly did not inflict the injuries on himself, and the child did not have any medical condition that could have explained the injuries. The child was in the sole care of [Schenck]. The child was fine when the mother left. When the police arrived, however, the child was unconscious, had suffered a subdural hematoma, and had fresh bruising all over his body.

Opinion and Order Denying Post-Sentence Motions, at 5.

In his second argument, Schenck contends that there was insufficient evidence to demonstrate that the injuries to the victim occurred during the period of time wherein the victim was in his sole custody. We disagree. Construed in the light most favorable to the Commonwealth, the evidence clearly demonstrated that the victim's injuries took place while he was in Schenck's sole custody. The evidence demonstrates that the victim was fine when the mother departed for work and left the victim in Schenck's sole custody. When the police arrived later that day, the victim was unconscious, had suffered a subdural hematoma, and had fresh bruising all over his body.

In his final argument, Schenck contends that the verdicts on all counts was contrary to the weight of the evidence. We disagree.

The denial of a new trial based on a lower court's determination that the verdict was not against the weight of the evidence is one of the least assailable reasons for granting or denying a new trial. ***Commonwealth v.***

- 6 -

*Clay*, 64 A.3d 1049, 1055 (Pa.2013). This Court reviews weight of the evidence claims pursuant to the following standard:

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa.2000) (internal citations, quotations, and footnote omitted).

Stated differently, a court may award a new trial because the verdict is against the weight of the evidence only when the verdict is so contrary to the evidence as to shock one's sense of justice,[2] "such that right must be

_____

[2] This Court has explained the notion of "shocking to one's sense of justice" as follows:

> When the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience.

*(Footnote Continued Next Page)*

given another opportunity to prevail." ***Commonwealth v. Goodwine***, 692 A.2d 233, 236 (Pa.Super.1997). Moreover, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. ***Widmer***, 744 A.2d at 753. When reviewing the trial court's determination, this Court gives the gravest deference to the findings of the court below. We review the court's actions for an abuse of discretion. ***Id.***

Schenck insists that the evidence was contradictory because the Commonwealth's expert testified that the "colors were off" on the photographs that he used to identify the victim's bruises. Schenck ignores the overwhelming evidence marshaled against him which proves that he assaulted the three-year-old victim and caused injuries so severe that the victim nearly died. The trial court properly rejected Schenck's challenge to the weight of the evidence.

Judgment of sentence affirmed.

---

*(Footnote Continued)* ─────────────

***Commonwealth v. Davidson***, 860 A.2d 575, 581 (Pa.Super.2004) (internal citations and quotations omitted).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/30/2016