**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Christopher Donell HANSLEY,**
**Appellant.**

Superior Court of Pennsylvania.

Submitted May 9, 2011.

Filed June 22, 2011.

Kimberly L. Stark, Lancaster, for appellant.

Matthew B. Daggett, Assistant District Attorney, Lancaster, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., GANTMAN, and FITZGERALD *, JJ.

OPINION BY GANTMAN, J.:

Appellant, Christopher Donell Hansley, appeals from the judgment of sentence entered in the Lancaster County Court of Common Pleas, following his jury trial conviction for first-degree robbery.[1] We affirm.

The relevant facts and procedural history of this case are as follows. On August 7, 2009, at approximately 2:50 p.m., a loss prevention associate for Target, Kyle Uniacke, observed Appellant acting suspiciously. Mr. Uniacke was watching the store's activities through surveillance cameras. Mr. Uniacke first observed Appellant enter the store with a plastic bag in his hand. Appellant proceeded to guest services, where he appeared to ask the store associate to hold his plastic bag while Appellant shopped. After the guest services associate took Appellant's plastic bag, Appellant went to the electronics section of the store. Mr. Uniacke watched Appellant select a DVD, and then place that DVD in a different location in the store. Mr. Uniacke suspected Appellant might be "staging" merchandise, *i.e.*, selecting and moving an item to a different part of the store to conceal the item for purposes of shoplifting. Mr. Uniacke instructed Lance Weiler, another loss prevention associate, to continue watching Appellant on the surveillance system while Mr. Uniacke observed Appellant on the floor. Mr. Uniacke was dressed in plain-clothes; he was not wearing a Target uniform.

On the floor of the store, Mr. Uniacke continued to observe Appellant selecting DVD's and moving them to other shelves throughout the store. Mr. Uniacke observed Appellant put three DVD's in his pockets. Pursuant to Target's protocol, a Target employee may not stop a person suspected of shoplifting until the individual passes all "points of sale" (or check-out counters/registers) without paying for the item(s). Appellant next proceeded to guest services, where he exchanged an

---

* Former Justice specially assigned to the Superior Court.

1. 18 Pa.C.S.A. § 3701(a)(1)(ii).

item he had brought into Target in his plastic bag with another item from the store. Appellant then passed all points of sale and began to exit the security towers, when the alarm sounded.

At that point, Mr. Uniacke announced his identification as Target security and asked Appellant to stop. Mr. Uniacke attempted to secure Appellant's arms, but Appellant fell backwards into a sitting position against the wall, and Mr. Uniacke fell to the ground with him. Observing the interaction from the surveillance system, Mr. Weiler left his position and approached Appellant and Mr. Uniacke to assess the situation. Mr. Weiler was dressed in his Target uniform and announced himself to Appellant as Target security as he tried to gain control of Appellant's arms. Appellant held his hands in his pockets throughout this encounter. During the course of the struggle, Mr. Uniacke observed a black handle of a knife slide out of Appellant's front pocket. Mr. Uniacke pushed the handle of the knife back into Appellant's pocket and instructed Mr. Weiler to "disengage" and step back from Appellant. Appellant then took out his knife and, from approximately one foot away, he pointed it toward Mr. Uniacke's stomach area. Mr. Uniacke and Mr. Weiler told Appellant to leave the store for the safety of the patrons. Appellant stood up and backed away, while removing from his pockets three DVD's—two copies of *Fast and the Furious*, and one copy of *12 Rounds*. Appellant stated: "Here, take your stuff" and threw the

DVD's to the ground along with other miscellaneous items in his pocket, and fled the scene. Among Appellant's miscellaneous items scattered on the floor was one copy of the *Die Hard* DVD, and a receipt from Appellant's transaction at guest services, revealing Appellant had evenly exchanged one copy of the DVD, *Missing*, which Appellant had brought with him in the plastic bag, for the *Die Hard* DVD. Subsequently, Mr. Uniacke and Mr. Weiler both positively identified Appellant in a photographic line-up. Thereafter, the Commonwealth charged Appellant with robbery and related offenses.[2] On March 10, 2010, a jury found Appellant guilty of first-degree robbery. On June 29, 2010, with the benefit of a pre-sentence investigation report, the court sentenced Appellant to five (5) to ten (10) years' imprisonment, plus two (2) years' probation. On July 8, 2010, Appellant timely filed a post-sentence motion. On August 23, 2010, the court held a hearing on Appellant's post-sentence motion, and Appellant withdrew his motion on the record. The court approved Appellant's withdrawal and dismissed the motion. On September 21, 2010, Appellant timely filed a notice of appeal.[3] On September 23, 2010, the court ordered Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), which Appellant timely filed on October 7, 2010.

Appellant raises the following issues for our review:

2. The Commonwealth later withdrew the retail theft and aggravated assault charges.

3. *See* Pa.R.Crim.P. 720(A)(2)(c) (stating: "If the defendant files a timely post-sentence motion, the notice of appeal shall be filed ... within 30 days of the entry of the order memorializing the withdrawal in cases in which the defendant withdraws the motion"); *Commonwealth v. Miller*, 715 A.2d 1203 (Pa.Su-

per.1998) (explaining when defendant withdraws post-sentence motion on record in open court, it is sufficient that court explain defendant's appellate rights on record; if court provides notice on record of information required by rule governing post-sentence motions, court need not produce additional written notice containing repetitive information).

WAS THE EVIDENCE PRESENTED AT TRIAL INSUFFICIENT TO PROVE BEYOND A REASONABLE DOUBT THAT [APPELLANT] WAS GUILTY OF ROBBERY?

DID THE COURT ERR IN DENYING A REQUEST FOR A TRIAL CONTINUANCE BASED ON A REQUEST BY COUNSEL THAT SHE NEEDED ADDITIONAL TIME TO SPEAK WITH A WITNESS WHO WAS HOSPITALIZED DUE TO A RECENT MEDICAL ISSUE?

DID THE TRIAL COURT ERR IN REFUSING TO INSTRUCT THE JURY REGARDING JUSTIFICATION AND SELF–DEFENSE?

DID THE COURT ERR IN PERMITTING THE ASSISTANT DISTRICT ATTORNEY TO QUESTION [APPELLANT] ABOUT THINGS THAT WENT BEYOND THE SCOPE OF THE DIRECT EXAMINATION?

DID THE COURT ERR IN PERMITTING THE ASSISTANT DISTRICT ATTORNEY TO MAKE COMMENTS QUESTIONING THE TRUTHFULNESS OF [APPELLANT'S] TESTIMONY?

(Appellant's Brief at 6).

For purposes of disposition, we combine Appellant's first, fourth, and fifth issues. Appellant argues Mr. Uniacke did not identify himself before "grabbing" Appellant. Appellant asserts Mr. Uniacke was "getting physical with him" and being "aggressive," and Appellant was unsure what was happening. Appellant claims Mr. Uniacke's attack was unlawful under 18 Pa. C.S.A. § 3929(d) (discussing scope of employee's authority to detain individual suspected of retail theft). Appellant emphasizes he acted out of fear for his own safety when he pulled a knife out of his pocket and pointed it toward Mr. Uniacke's stomach. Appellant maintains he raised the defenses of self-defense and justification as questions for the jury to decide. Appellant insists the Commonwealth did not disprove Appellant's proffered defenses beyond a reasonable doubt. Appellant concludes the Commonwealth failed to present sufficient evidence to sustain his conviction for robbery, and this Court must vacate his judgment of sentence and dismiss the charges.

Appellant also argues the prosecutor asked Appellant during his cross-examination if he had watched the surveillance videotapes prior to trial. Appellant asserts defense counsel objected to the prosecutor's questions related to the videotape as beyond the scope of direct examination. Appellant emphasizes that during his direct examination he did not reference the videotape, or whether he viewed it prior to trial. Appellant maintains the court's decision to overrule defense counsel's objection because Appellant "is open for all questioning" is inconsistent with Pennsylvania's application of a "restrictive" versus "wideopen" cross-examination theory. Appellant concludes the court's decision to deny counsel's objection was not harmless error, and this Court should vacate Appellant's judgment of sentence and remand for a new trial.

Additionally, Appellant argues the prosecutor made various sarcastic comments during Appellant's cross-examination, with the intent of displaying his disbelief of Appellant's testimony. Appellant claims defense counsel objected to the prosecutor's remarks, but the court overruled her objections. Appellant maintains the prosecutor's remarks prejudiced the jury against Appellant, causing them to form a fixed bias and hostility toward him such that the jury could not render a fair and impartial verdict. Appellant concludes the court's failure to sustain defense counsel's objections to the prosecutor's comments

constituted reversible error, and this Court should vacate Appellant's judgment of sentence and remand for a new trial. For the following reasons, we cannot agree with Appellant's contentions.

■■■ Preliminarily, we observe generally that issues not raised in a Rule 1925(b) statement will be deemed waived for review. *Commonwealth v. Castillo*, 585 Pa. 395, 403, 888 A.2d 775, 780 (2005) (quoting *Commonwealth v. Lord*, 553 Pa. 415, 420, 719 A.2d 306, 309 (1998)). An appellant's concise statement must properly specify the error to be addressed on appeal. *Commonwealth v. Dowling*, 778 A.2d 683 (Pa.Super.2001). In other words, the Rule 1925(b) statement must be "specific enough for the trial court to identify and address the issue [an appellant] wishe[s] to raise on appeal." *Commonwealth v. Reeves*, 907 A.2d 1, 2 (Pa.Super.2006), *appeal denied*, 591 Pa. 712, 919 A.2d 956 (2007). "[A] [c]oncise [s]tatement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no [c]oncise [s]tatement at all." *Id.* The court's review and legal analysis can be fatally impaired when the court has to guess at the issues raised. *Id.* Thus, if a concise statement is too vague, the court may find waiver. *Id.*

■■■ Instantly, in his Rule 1925(b) statement, Appellant presented his first, fourth, and fifth issues on appeal as follows:

> The evidence presented by the Commonwealth was insufficient to prove beyond a reasonable doubt that [Appellant] was guilty of Robbery.

> The [c]ourt erred in permitting the Assistant District Attorney to question [Appellant] about things that went beyond the scope of the direct examination.

> The [c]ourt erred in permitting the Assistant District Attorney to constantly make comments questioning the truthfulness of [Appellant's] testimony.

(Appellant's Statement of Errors Complained of on Appeal, filed 10/7/10, at 1–2). In response, the trial court addressed those issues as follows:

> [Appellant] first complains that the Commonwealth presented insufficient evidence to prove [Appellant's] guilt of the charge of robbery beyond a reasonable doubt. [Appellant] does not develop this issue in his Statement of Matters Complained of on Appeal, and therefore the [c]ourt considers this issue waived.[1]

---

[1] Pa.R.A.P. 1925(b)(4)(ii) provides that an appellant's statement of matters complained of [on appeal] must "concisely identify each ruling or error that appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(vii) provides that all issues not raised in accordance with subsection (b) of this rule are waived. [Appellant's] Statement of Matters Complained of simply states that the Commonwealth did not proffer sufficient evidence to prove beyond a reasonable doubt that [Appellant] was guilty of Robbery. [Appellant] did not develop this contention in any more detail, and therefore has waived this issue.

\*　　\*　　\*

> [Appellant also] complains that the [c]ourt erred in permitting the Assistant District Attorney to question [Appellant] on issues outside the scope of direct examination. [Appellant] does not point to specific questions asked by the Assistant District Attorney during cross[-]examination of [Appellant] that he contends surpassed the scope of direct examination. As [Appellant] does not develop this contention, the [c]ourt considers this issue waived.[3]

---

[3] *See* Pa.R.A.P. 1925(b)(4).

[Appellant] lastly complains that the [c]ourt erred in allowing the Assistant District Attorney to make comments questioning the truthfulness of [Appellant's] testimony. As [Appellant] does not further develop this contention and does not specify which comments the [c]ourt erred in allowing, or how the [c]ourt erred in allowing them, the [c]ourt considers this issue waived as well.[4]

---

[4] *See id.*

(Trial Court Opinion, filed 10/27/10, at 2–4). Appellant did not specify his first, fourth, or fifth issues on appeal in his Rule 1925(b) statement and precluded the trial court's review of those claims as a result. Consequently, we deem Appellant's first, fourth, and fifth claims waived on appeal. *See Reeves, supra; Dowling, supra.*

Moreover, with respect to Appellant's sufficiency claim:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. More-over, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jones,* 874 A.2d 108, 120–21 (Pa.Super.2005) (quoting *Commonwealth v. Bullick,* 830 A.2d 998, 1000 (Pa.Super.2003)).

The Crimes Code defines the offense of robbery in relevant part as follows:

### § 3701. Robbery

(a) **Offense defined.—**

(1) A person is guilty of robbery if, in the course of committing a theft, he:

\* \* \*

(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;

\* \* \*

18 Pa.C.S.A. § 3701(a)(1)(ii).

"[T]he Commonwealth need not prove a verbal utterance or threat to sustain a conviction under subsection 3701(a)(1)(ii)." *Commonwealth v. Alford,* 880 A.2d 666, 676 (Pa.Super.2005), *appeal denied,* 586 Pa. 720, 890 A.2d 1055 (2005) (quoting *Commonwealth v. Hopkins,* 747 A.2d 910, 914 (Pa.Super.2000)). "It is sufficient if the evidence demonstrates aggressive actions that threatened the victim's safety. For the purposes of subsection 3701(a)(1)(ii), the proper focus is on the nature of the threat posed by an assailant and whether he reasonably placed a victim in fear of immediate serious bodily injury." *Alford, supra* (quoting *Hopkins, supra* ) (internal quotation marks omitted). *See also Commonwealth v. Duffey,* 519 Pa. 348, 548 A.2d 1178 (1988)

(holding sufficient evidence supported robbery conviction where defendant confessed to holding victim at knifepoint while taking her money and watch).

■ Instantly, the Commonwealth presented the following evidence at trial: (1) Mr. Uniacke first observed Appellant *via* Target's surveillance system entering the store with a plastic bag in his hand; (2) Appellant proceeded to guest services, where he appeared to ask the associate to hold his plastic bag while Appellant shopped; (3) Mr. Uniacke watched Appellant proceed to the electronics section of the store, select a DVD, and then place that DVD in a different location in the store; (4) Mr. Uniacke suspected Appellant might be "staging" merchandise,[4] so he instructed Mr. Weiler to continue watching Appellant on the surveillance system while Mr. Uniacke observed Appellant on the floor; (5) Mr. Uniacke continued to observe Appellant selecting DVD's, and moving them to other shelves throughout the store, and eventually place three DVD's into his pockets; (6) Appellant next proceeded to guest services, where he exchanged one item he had brought into Target in his plastic bag with one item from the store; (7) Appellant then passed all points of sale and began to exit the security towers, when the alarm sounded; (8) Mr. Uniacke announced his identification as Target security, asked Appellant to stop, and attempted to secure Appellant's arms; (9) Mr. Weiler left his position from the surveillance room and approached Appellant and Mr. Uniacke to assess the situation; (10) Mr. Weiler announced himself to Appellant as Target security and tried to gain control of Appellant's arms; (11) Mr. Uniacke observed a black handle of a knife slide out of Appellant's front pocket;

(12) Mr. Uniacke pushed the handle of the knife back into Appellant's pocket and instructed Mr. Weiler to "disengage" and step back from Appellant; (13) Appellant then took out his knife and pointed it at Mr. Uniacke's stomach from approximately one foot away from Mr. Uniacke; (14) Mr. Uniacke and Mr. Weiler told Appellant to leave the store for the safety of the patrons; (15) Appellant stood up and backed away, while removing from his pockets three DVD's—two copies of *Fast and the Furious*, and one copy of *12 Rounds;* (16) Appellant said: "Here, take your stuff," and threw the DVD's to the ground along with other miscellaneous items in his pocket, and fled the scene; (17) among Appellant's miscellaneous items scattered on the floor was one copy of the *Die Hard* DVD, and a receipt from Appellant's transaction at guest services, revealing Appellant had exchanged one copy of the DVD, *Missing,* which Appellant had brought with him in the plastic bag, for an even exchange with the *Die Hard* DVD; (18) subsequently, Mr. Uniacke and Mr. Weiler both positively identified Appellant in a photographic line-up; (19) a review of Target's inventory confirmed no one had purchased any *Fast and the Furious* and/or *12 Rounds* DVD on that day; (20) video surveillance confirmed no one other than Appellant had exited through the security towers when the alarm sounded. Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, Appellant's acts were sufficiently aggressive, carried a threat of imminent bodily harm, and reasonably placed the victims in fear of immediate serious bodily injury. *See Duffey, supra; Alford, supra.* Therefore, suffi-

---

4. Appellant admitted during his testimony that he was staging the merchandise due to his habit of shoplifting in the past. Appellant denied placing the DVD's in his pocket at any time and denied attempting to leave the store with any unpurchased items.

cient evidence supported Appellant's robbery conviction.

In his second issue, Appellant argues defense counsel made a motion for a continuance after Mr. Uniacke testified differently at trial than he had at the preliminary hearing. Appellant asserts defense counsel wanted an opportunity to speak with the judge who presided over the preliminary hearing and had taken notes.[5] Appellant maintains the judge who had presided over the preliminary hearing was unavailable because she had suffered a heart attack and was hospitalized at the time. Appellant explains defense counsel called the judge's office to determine whether the judge's notes would shed any light on the matter, but the judge wrote the notes in shorthand and the staff was unable to decipher the content. Appellant concedes he is uncertain what the judge's notes say or what the presiding judge would have remembered about Mr. Uniacke's preliminary hearing testimony. Appellant insists the court's denial of counsel's motion for a continuance essentially denied Appellant the ability to interview a witness. Appellant stresses the presiding judge from the preliminary hearing was an essential witness to determine whether Mr. Uniacke's trial testimony was inconsistent. Appellant admits defense counsel considered the alternative of withdrawing her representation and obtaining replacement counsel for Appellant, but ultimately decided it would be more detrimental to Appellant to have replacement counsel take over than helpful to have defense counsel testify. Appellant concludes the court erred in denying counsel's motion for a continuance, and this Court must vacate Appellant's judgment of sentence and remand for a new trial. We disagree.

Our standard of review when considering a court's decision to deny a motion for a continuance is as follows:

> The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of that discretion. [A]n abuse of discretion is not merely an error of judgment. Rather, discretion is abused when the law is over-ridden or misapplied, or the result of partiality, prejudice, bias, or ill-will as shown by the evidence or the record. The grant of a continuance is discretionary and a refusal to grant is reversible error only if prejudice or a palpable and manifest abuse of discretion is demonstrated.

*Commonwealth v. Griffin,* 804 A.2d 1, 12 (Pa.Super.2002), *appeal denied,* 582 Pa. 671, 868 A.2d 1198 (2005) (internal citations and quotation marks omitted). "In reviewing a denial of a continuance, the appellate court must have regard for the orderly administration of justice, as well as the right of the defendant to have adequate time to prepare a defense." *Commonwealth v. Wesley,* 562 Pa. 7, 28, 753 A.2d 204, 215 (2000).

Instantly, Mr. Uniacke stated on direct examination that he immediately identified himself as a Target employee when he approached Appellant after the alarm sounded. Defense counsel objected and requested a sidebar. At sidebar, defense counsel informed the court she believed Mr. Uniacke had testified differently at the preliminary hearing. The court told counsel she could testify as to Mr. Uniacke's alleged inconsistency, but that she would have to retain replacement counsel for Appellant if she wished to do so. Defense counsel decided to proceed with

---

**5.** Defense counsel explained the public defender's office does not permit a court report-er to transcribe notes of testimony at a preliminary hearing.

cross-examination and the following exchange took place:

[Defense counsel]: Do you recall on cross-examination [at the preliminary hearing] I asked you a question as to whether you identified yourself immediately or if it was at some other time during the altercation. Do you recall your answer to me?

[Mr. Uniacke]: I would have said that I did it immediately.

[Defense counsel]: So if I were to tell you that my recollection was not that it was immediate, but I believe the testimony to be that it was at some point during the altercation, that would be incorrect?

[Mr. Uniacke]: Correct.

(N.T. Trial, 3/10/10, at 139–140). Following defense counsel's cross-examination of Mr. Uniacke, counsel made a motion for a continuance to interview the judge who had presided over the preliminary hearing. The court then asked counsel if she knew if the judge would have anything useful to say. Defense counsel replied: "We don't. But we don't know either way." (*See id.* at 180–81). Consequently, the court denied counsel's motion.

The court addressed Appellant's issue on appeal as follows:

[Appellant] ... complains that the [c]ourt erred in denying [Appellant's] request for a trial continuance in order to allow [Appellant] additional time to speak with a witness who had been recently hospitalized. The record demonstrates that [Appellant] requested this continuance on March 10, 2010, the second day of [Appellant's] two day jury trial. [Appellant] requested a continuance in order to subpoena a Magisterial District Judge to testify regarding testimony heard at [Appellant's] Preliminary Hearing, though [d]efense [c]ounsel admitted she was not certain of what testi-

mony the Magisterial District Judge could offer.

The [c]ourt did not err in denying [Appellant's] request for a continuance on the second day of [Appellant's] trial. The [c]ourt cannot disrupt an ongoing jury trial in order to allow [Appellant] to investigate testimony that took place months prior to trial without more justification than [d]efense [c]ounsel's [bald] assertion that a witness may be material.

(Trial Court Opinion at 2–3) (internal citations omitted). Additionally, defense counsel conceded she was able to interview during trial another individual present at the preliminary hearing, Ms. Swinehart. Ms. Swinehart told defense counsel and the prosecutor that she had no direct recollection of Mr. Uniacke's testimony at the preliminary hearing other than the notes that were taken, and her recollection after reading the notes was detrimental to Appellant's case. (*See* N.T., 3/10/10, at 221–22). As a result, the defense declined to call Ms. Swinehart as a witness. Our review of the record confirms the court's decision was proper, and the court's denial of defense counsel's motion for a continuance did not prejudice Appellant's case. *See Wesley, supra; Griffin, supra.*

In his third issue, Appellant argues Mr. Uniacke did not identify himself before "grabbing" him. Appellant asserts Mr. Uniacke was "getting physical with him" and being "aggressive," and Appellant was unsure what was happening. Appellant claims Mr. Uniacke's attack on him was unlawful under 18 Pa.C.S.A. § 3929(d) (discussing scope of employee's authority to detain individual suspected of retail theft). Appellant emphasizes he acted out of fear and for his own safety when he pulled a knife out of his pocket and pointed it toward Mr. Uniacke's stomach. Appellant maintains he raised the defenses of self-defense and justification as questions

for the jury to decide. Appellant insists the Commonwealth did not disprove Appellant's proffered defenses beyond a reasonable doubt. Appellant concludes the court erred by refusing to instruct the jury on self-defense and justification, where Appellant raised those issues at trial and requested the court for such points of charge, and this Court must vacate Appellant's judgment of sentence and remand for a new trial. We disagree.

■■■ "A faulty jury charge will require the grant of a new trial only where the charge permitted a finding of guilt without requiring the Commonwealth to establish the critical elements of the crimes charged beyond a reasonable doubt." *Commonwealth v. Wayne*, 553 Pa. 614, 632, 720 A.2d 456, 465 (1998), *cert. denied*, 528 U.S. 834, 120 S.Ct. 94, 145 L.Ed.2d 80 (1999).

The Crimes Code explains the justification defense as follows:

**§ 505. Use of force in self-protection**
**(a) Use of force justifiable for protection of the person.**—The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

**(b) Limitations on justifying necessity for use of force.—**

\* \* \*

(2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

(i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

(ii) the actor knows that he can avoid the necessity of using such force with

complete safety by retreating or by surrendering possession of a thing to a person asserting a claim of right thereto or by complying with a demand that he abstain from any action which he has no duty to take, except that:

(A) the actor is not obliged to retreat from his dwelling or place of work, unless he was the initial aggressor or is assailed in his place of work by another person whose place of work the actor knows it to be; and

(B) a public officer justified in using force in the performance of his duties or a person justified in using force in his assistance or a person justified in using force in making an arrest or preventing an escape is not obliged to desist from efforts to perform such duty, effect such arrest or prevent such escape because of resistance or threatened resistance by or on behalf of the person against whom such action is directed.

(3) Except as required by paragraphs (1) and (2) of this subsection, a person employing protective force may estimate the necessity thereof under the circumstances as he believes them to be when the force is used, without retreating, surrendering possession, doing any other act which he has no legal duty to do or abstaining from any lawful action.

18 Pa.C.S.A. § 505(a); (b)(2)-(3).

With respect to a jury instruction on self-defense, this Court has stated:

Before the issue of self-defense may be submitted to a jury for consideration, a valid claim of self-defense **must be made out as a matter of law, and this determination must be made by the trial judge.** Such claim may consist of evidence from whatever source. Such evidence may be adduced by the defen-

dant as part of his case, or conceivably, may be found in the Commonwealth's own case in chief or be elicited through cross-examination. However, such evidence from whatever source must speak to three specific elements for a claim of self-defense to be placed in issue for a jury's consideration.

Thus, as provided by statute and as interpreted through our case law, to establish the defense of self-defense it must be shown that[:] a) the slayer was free from fault in provoking or continuing the difficulty which resulted in the slaying; b) that the slayer must have reasonably believed that he was in imminent danger of death or great bodily harm, **and that there was a necessity to use such force in order to save himself therefrom;** and c) the slayer did not violate any duty to retreat or to avoid the danger.

If there is any evidence from whatever source that will support **these three elements** then the decision as to whether the claim is a valid one is left to the jury and the jury must be charged properly thereon by the trial court.

*Commonwealth v. Mayfield,* 401 Pa.Super. 560, 585 A.2d 1069, 1070–71 (1991) (en banc) (internal citations omitted) (emphasis added).

■■■ Instantly, the trial court refused to instruct the jury on self-defense and justification. The court reasoned:

[Appellant] … complains that the [c]ourt erred in refusing to instruct the jury on the issues of justification or self-defense. [Appellant] does not point to facts or testimony at trial that would support a justification or self-defense instruction and does not develop this contention in more detail.

The [c]ourt did not err in refusing to instruct the jury on the issues of justification or self-defense. The testimony and facts of the case did not support a

jury instruction for justification or self-defense. [Appellant's] failure to further develop its contention that the [c]ourt should have instructed the jury on these issues supports the [c]ourt's finding.

(Trial Court Opinion at 3–4). Even if the court accepted as true Appellant's assertion that Mr. Uniacke failed to identify himself as a Target employee before he "grabbed" Appellant, Appellant's decision to respond to Mr. Uniacke's efforts to restrain Appellant by withdrawing a knife and pointing it at Mr. Uniacke's stomach does not constitute proper justification under Section 505, and does not meet the three (3) elements required to establish self-defense. *See* 18 Pa.C.S.A. § 505; *Mayfield, supra.* The court properly determined as a matter of law that Appellant was not entitled to a jury instruction on self-defense or justification under the facts of this case, and we see no reason to disturb the court's decision on appeal. *See id.* Accordingly, we affirm.

Judgment of sentence affirmed.