J-S90037-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JUSTIN JAMES SACCOMANDI, | |
| Appellant | No. 497 EDA 2016 |

Appeal from the Judgment of Sentence October 22, 2015
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0002510-2015

BEFORE:  OTT, J., SOLANO, J. AND JENKINS, J.

MEMORANDUM BY JENKINS, J.:          **FILED NOVEMBER 23, 2016**

A jury found Justin Saccomandi guilty of simple assault for attempting by physical menace to put another in fear of imminent serious bodily injury.[1] The trial court sentenced Saccomandi to two years' probation.  Saccomandi filed timely post-sentence motions, which the court denied, and a timely notice of direct appeal.  Both Saccomandi and the trial court complied with Pa.R.A.P. 1925.

Saccomandi raises a single argument on appeal: "The trial court erred in denying the defense's motion for acquittal because the Commonwealth failed to rebut [] Saccomandi's defense of self-defense beyond a reasonable doubt."  For the reasons that follow, we affirm.

---

[1] 18 Pa.C.S. § 2701(a)(3).

Saccomandi challenges the sufficiency of the evidence in his lone argument on appeal. When examining a challenge to the sufficiency of evidence, our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super.2011).

Viewed in the light most favorable to the Commonwealth, the evidence of record is as follows. On March 13, 2015, Frederico Aguilar ("the victim") was traveling south on Route 322 in Delaware County, when he noticed a red pick–up truck accelerate towards his vehicle from behind as the victim approached a red light. The victim was traveling with his wife and two children (a 16-year-old son and a 9-year-old daughter) on their way to pick up dinner. After the light turned green, the victim proceeded to the next red

light (a short distance away) at a normal speed and entered the left-hand turning lane. The red pick-up truck proceeded to drive in the lane to the right of and parallel to the victim, maintaining the same speed as the victim. Saccomandi was driving the truck and was scowling at the victim in a nasty manner while shaking his head.

The victim gave Saccomandi the finger and turned left when the light turned green. In response, Saccomandi turned left from the wrong lane of traffic and proceeded to follow the victim's vehicle, revving his engine while screaming at him. At the next red light, Saccomandi stopped closely behind the victim, screamed that he "would kill him" and gave "the most evil look."

Saccomandi's aggression continued after the light changed: he sped up next to the victim's vehicle so that he was traveling parallel to him in the opposite lane of traffic and again screamed that he would kill the victim. Saccomandi then turned into a church parking lot and the victim followed him in. Saccomandi parked his pick-up truck, but kept it running; the victim parked his car about 20 feet away from Saccomandi. The victim did not block the exit.

The victim and his son (both unarmed) began walking towards Saccomandi's truck but froze as they saw Saccomandi reaching towards an object. Saccomandi then brandished a handgun out of his driver's side window, pointed it at the victim and his son, and yelled at them to "back up, back up." Saccomandi and his son remained still, but Saccomandi fired a shot at their feet. The bullet struck about one foot away from the victim.

The victim screamed for his wife to call the police. Saccomandi fled, driving over a grassy hill in the parking lot and back out onto the highway, almost crashing into another vehicle. The victim did not need to move his vehicle for Saccomandi to flee; indeed, the victim was still outside of his vehicle when Saccomandi sped away.

Officer Gaspari of the Chichester Police Department responded to the 911 call, spoke to the family, and then recovered a .40-caliber handgun round. Another witness, Lisa Hernandez, was on the road that same evening and observed Saccomandi driving his red pick-up truck in a reckless manner while screaming and cursing at the victim's vehicle. Saccomandi's truck cut Hernandez off on multiple occasions as he screamed obscenities at the victim and his family. Hernandez recorded the truck's license plate number, and when she learned of the shooting on March 18, 2016, she called the police to report the license plate.

Later on March 18th, Detective Jones of the Chichester Police Department connected the license plate number to Saccomandi. The victim picked Saccomandi out of a photo line-up. The detective drove to Saccomandi's home and asked Saccomandi about the incident. Saccomandi responded: "The incident with the three Mexicans?" The police executed a search warrant at Saccomandi's home and recovered a firearm, but not the one used in the shooting. The next day, however, Saccomandi produced the .40-caliber handgun used in the shooting.

- 4 -

In his sole argument on appeal, Saccomandi contends that the Commonwealth failed to rebut the evidence of self-defense. Before addressing this argument, we find it helpful to discuss why the evidence was sufficient to establish the crime of simple assault.

18 Pa.C.S. § 2701(a)(3) provides that a person is guilty of simple assault if he "attempts by physical menace to put another in fear of imminent serious bodily injury." *Id*. To satisfy this provision, the Commonwealth must prove that the defendant "intentionally plac[ed] another in fear of imminent serious bodily injury through the use of menacing or frightening activity." ***Commonwealth v. Repko***, 817 A.2d 549, 554 (Pa.Super.2003). "The act of pointing a gun at another person can constitute simple assault as an attempt by physical menace to put another in fear of imminent serious bodily injury." ***In Re Maloney***, 636 A.2d 671, 674 (Pa.Super.1994) (*prima facie* case of simple assault by physical menace established where driver pointed gun at another driver and said "get the f*** out of here"); ***Commonwealth v. Little***, 614 A.2d 1146, 1148 (Pa.Super.1992) (simple assault by physical menace established where defendant "erratically emerged from her home carrying a shotgun, shouting, and advancing from her porch" even though she cradled gun and never fired it).

Whereas the defendants in ***Maloney*** and ***Little*** merely pointed their weapons at the victims, Saccomandi threatened to kill the victim and his

family and fired his gun at the victim, with the bullet missing the victim by just one foot. This clearly was sufficient to prove that Saccomandi intentionally placed the victim in fear of imminent serious bodily injury through the use of a menacing or frightening activity. In addition, testimony from the victim, his family, and Hernandez demonstrates that Saccomandi initiated the road rage incident and cursed, screamed, and scowled at the victim and his family. He drove up alongside of them in the wrong lane of traffic, tailgated them, gunned his engine, and came to abrupt, shuddering stops, all while threatening to kill them.

With this evidence of simple assault as a backdrop, we turn to Saccomandi's claim that the Commonwealth failed to rebut the evidence of self-defense. When the defendant claims that he acted in self-defense, the Commonwealth bears the burden of disproving the defense beyond a reasonable doubt. 18 Pa.C.S. § 505; *Commonwealth v. Smith*, 97 A.2d 782, 787 (Pa.Super.2014). To accomplish this, the Commonwealth must introduce evidence to disprove the claim of self-defense; the fact-finder cannot simply disbelieve the defendant's evidence. *Id*. The Commonwealth sustains this burden if it establishes at least one of the following: (1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or (2) the accused provoked or continued the use of force; or (3) the accused had a duty to retreat and the retreat was possible with complete safety. *Id*. The Commonwealth must establish only one of these

three elements beyond a reasonable doubt to insulate its case from a self-defense challenge. *Id*.

The evidence satisfies elements (2) and (3) of the test articulated in *Smith*. With regard to element (2), which focuses on whether the defendant provoked or continued the use of force, the Commonwealth sustains its burden "if it proves … that the [defendant] was not free from fault in provoking or continuing the difficulty …" *Commonwealth v. Mouzon*, 53 A.3d 736, 740 (Pa.2012). In *Mouzon*, the defendant followed a group of women down a flight of stairs while verbally haranguing them and threatening to kill them. The victim, a "rather large man," interceded on the womens' behalf by approaching the defendant and began fighting with him. The defendant produced a gun and shot it twice, killing the victim and injuring a bystander. Our Supreme Court held that this evidence proved that the defendant provoked the use of force, thus negating his claim of self-defense:

> The altercation between [the defendant and the victim] did not occur spontaneously, or in isolation; it was the culmination of an ongoing confrontation in the bar initiated by [the defendant] alone and continued and escalated by [the defendant] alone. As a matter of law, we conclude that [he] was not free from fault in provoking or continuing 'the difficulty' that led to the slaying, so as to warrant his use of deadly force, such that he cannot be held responsible for shooting two people, one fatally.
>
> [The defendant] is correct that there is decisional law suggesting that merely insulting or scandalous words of a light or trivial kind do not suffice to establish the requisite provocation to negate a claim of self-defense. But, the uncontradicted evidence here shows that [his] words and actions were substantially more

provocative than a mere verbal insult. [He] did not simply utter rude or crass comments to the women; he closely followed the women down a flight of stairs, verbally haranguing them the entire time. Moreover, he threatened to kill them, in no uncertain terms. Not all words are the same; and words combined with conduct can be extremely provocative. Threats to kill, moreover, invite response or even interference, including from those with a sense of chivalry, and even from those of a mind to go further and punish the provocateur. [The defendant] may well have been emboldened by alcohol consumption, as he now says. But, it is no less likely that his actions represented a bravado borne of the fact that he knew -- where others in the bar, including [the victim], did not -- that, in harassing and threatening the women, he was armed not only with his wits and his fists, but with a loaded handgun concealed in his waistband … Those circumstances establish that [the defendant] was not free from fault, but provoked what became a fatal encounter, irrespective of what he now alleges he may or must have believed respecting the need to defend himself.

*Id*. at 751. The present case is similar to **Mouzon**. In a fit of road rage, Saccomandi drove alongside the victim and his family, tailgated them, gunned his engine, and came to abrupt, shuddering stops, all while threatening to kill them. This vile conduct led to the confrontation in the parking lot where Saccomandi fired his gun at the victim. Admittedly, the victim himself was not entirely blameless, because he followed Saccomandi's vehicle into the parking lot and advanced towards the vehicle on foot with his teenage son. The fact remains however, that Saccomandi himself was not *free from fault* in provoking or continuing this incident. The evidence thus negates his claim of self-defense.

With respect to element (3), a duty to retreat exists "if the actor knows that he can avoid the necessity of using such force with complete

safety by retreating." 18 Pa.C.S. § 505(b)(2)(ii).[2] During the incident in the parking lot, Saccomandi was safely inside his vehicle and had an unobstructed path to the exit. There was no evidence that anyone other than Saccomandi was holding a weapon. Under these circumstances, Saccomandi could have driven away safely without firing his gun; he chose instead to fire his gun at the victim before driving away. Once again, this evidence negates his claim of self-defense.

Saccomandi attempts to challenge the sufficiency of the evidence by citing to his own testimony and ignoring the Commonwealth's evidence against him. In so doing, he ignores this Court's duty to examine the evidence in the light most favorable to the verdict winner, herein the Commonwealth. Viewed under this standard, the evidence is sufficient to establish Saccomandi's guilt.

Judgment of sentence affirmed.

---

[2] There is no duty to retreat if the actor is in his dwelling or place of work, unless he was the initial aggressor or is assailed in his place of work by another person whose place of work the actor knows it to be. 18 Pa.C.S. § 505(b)(2)(ii). None of these circumstances exist here.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/23/2016