J-S66018-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| JULIE LYNN ANDREW | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HALLSTON MANOR FARM, LLC | : | No. 600 EDA 2018 |

Appeal from the Order Entered January 12, 2018
In the Court of Common Pleas of Chester County
Civil Division at No(s):  No. 2007-04660

BEFORE:  GANTMAN, P.J., PANELLA, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY PANELLA, J.                 **FILED FEBRUARY 22, 2019**

Julie Lynn Andrew appeals from the order granting in part and denying in part her petition for contempt against appellee, Hallston Manor Farm, LLC ("Hallston"). We affirm.

This appeal arises out of a failed oral partnership. The partnership intended to breed and market American Saddlebred horses. Pursuant to this goal, Andrew transferred her pregnant mare to Hallston's possession so that the mare could be bred with Hallston's stallion promptly after giving birth. Hallston, in turn, transferred a gelding, The Bess Bet, to Andrew for training and marketing purposes.

Andrew's mare gave birth to the horse named Our Belladonna. Immediately thereafter, Andrew's mare was bred with Hallston's stallion, resulting in a horse named Roi du Soleil.

Andrew subsequently filed a petition to dissolve the partnership, and filed a complaint asserting that Hallston had failed to abide by the terms of the partnership. In response, Hallston filed counterclaims asserting Andrew had failed to abide by the terms of the partnership.[1] After a bench trial in 2010, the court resolved the litigation by entering the following order ("the 2011 Decision"):

1. On the claims by [Andrew] against [Hallston], the court awards three thousand ($3,000.00) dollars in favor of [Andrew] and against [Hallston;] further, ownership of the horse "Bes Bet" shall be transferred by [Hallston] to [Andrew.] If [Andrew] elects in writing, within thirty (30) days, to refuse ownership of said horse, then [Hallston] shall remove said horse from [Andrew's] property within thirty (30) days of such election;

2. On the counterclaims by [Hallston] against [Andrew,] the court awards seventy thousand ($70,000) dollars in favor of [Hallston] and against [Andrew;] and

3. The court further orders and decrees [Andrew] shall, within thirty (30) days, remove the horse, "Phantom Flight", from [Hallston's] property. The horses, "Our Belladonna" and "Roi du Soleil," shall be sold at private sale on terms agreed to by the parties. Should the parties fail to agree on said sale terms within sixty (60) days, the horse, or horses, shall be sold at public auction forthwith. In either event, the net proceeds of the sale of both horses shall be used to satisfy the two above Awards on a pro-rata basis, if not in full. Any funds remaining thereafter shall be divided equally between [Andrew] and [Halltson.]

The partnership between [Andrew] and [Hallston] is hereby dissolved.

---

[1] Initially, Hallston contested the jurisdiction of the trial court, as it had filed a separate action against Andrew in New York state court. The trial court stayed the proceedings until the resolution of the New York litigation. Ultimately, Hallston filed an Answer and New Matter to Andrew's first amended complaint, and has not renewed its objection to jurisdiction.

Decision filed 1/10/11.

In 2016, Andrew filed a petition for contempt against Hallston, alleging Hallston had willfully failed to comply with the 2011 Decision. After a hearing on the petition, the court found Hallston in contempt for failing to finalize the transfer of ownership of The Bess Bet to Andrew. However, the court found that Hallston had not *willfully* violated the terms of the 2011 Decision by failing to sell Our Belladonna and Roi du Soleil. The court therefore declined to find Hallston in contempt on these grounds.

Andrew filed this timely appeal. She argues the court abused its discretion when it declined to find Hallston in contempt. **See** Appellant's Brief, at 5. The trial court found any issue raised by Andrew waived, as it concluded Andrew's statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b) was too vague to allow a response.

An appellant's Rule 1925(b) statement must clearly and precisely identify any issue the appellant wishes to raise on appeal. **See Commonwealth v. Hansley**, 24 A.3d 410, 415 (Pa. Super. 2011). If the Rule 1925(b) statement is too vague, the appellant's issues may be deemed waived on appeal. **See id**.

While Andrew's Rule 1925(b) statement is far from a model of precision, we decline to find waiver in this instance. The single issue she raises on appeal, whether the court abused its discretion in denying her petition for contempt with respect to two of the three horses at issue, is straightforward and capable

- 3 -

of a quick resolution given the relatively small record and the well-argued briefs of the parties.

When reviewing contempt orders, we must consider that

> [e]ach court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute. When reviewing an appeal from a contempt order, the appellate court must place great reliance upon the discretion of the trial judge.

*Langendorfer v. Spearman*, 797 A.2d 303, 307 (Pa. Super. 2002) (quoting *Garr v. Peters*, 773 A.2d 183, 189 (Pa. Super 2001)). "The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason." *Godfrey v. Godfrey*, 894 A.2d 776, 780 (Pa. Super. 2006) (citation omitted).

Additionally, "[i]n proceedings for civil contempt of court, the general rule is that the burden of proof rests with the complaining party to demonstrate, by preponderance of the evidence that the defendant is in noncompliance with a court order." *Lachat v. Hinchcliffe*, 769 A.2d 481, 488 (Pa. Super. 2001) (citations omitted). "However, a mere showing of noncompliance with a court order, or even misconduct, is never sufficient alone to prove civil contempt." *Id*. (citation omitted).

> [t]o sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent.

- 4 -

*Stahl v. Redcay*, 897 A.2d 478, 489 (Pa. Super. 2006) (citation omitted).

The court found Hallston in contempt for failing to finalize the transfer of ownership of The Bess Bet. However, the court found that Hallston's failure to abide by the 2011 Decision's provisions on Our Belldonna and Roi du Soleil was not volitional or motivated by wrongful intent. As a result, the court declined to find Hallston in contempt with respect to its failure to sell Our Belladonna and Roi du Soleil.

The record supports this finding. Hallston presented evidence that the market for American Saddlebred horses had collapsed after 2007. *See* N.T., Videotaped Deposition of Mary Hall-Fisk, 12/20/17, at 5. In fact, Hallston left the business of breeding and selling American Saddlebred horses as of December 2011. *See id*., at 5-6. Hallston offered Our Belladonna to Andrew, who refused the offer. *See id*., at 9.

The parties were unable to agree to the terms of a sale of the two horses. *See id*., at 14. Andrew desired to sell them at a public auction, but refused to pay any of the costs of preparation for sale. *See id*., at 14-15. In 2013, Hallston determined the horses were of no salable value and gave them away to avoid incurring further maintenance costs. *See id*., at 17.

Andrew points to evidence she presented regarding the value of the horses from 2009-2011. *See* Appellant's Brief, at 13-14. However, the court clearly found Hallston's evidence more credible than Andrew's. As an appellate

court reviewing a cold record, we are in no position to second-guess the court's credibility findings absent an abuse of discretion. We see no such abuse here.

Furthermore, Andrew does not cite to any evidence supporting a finding that the horses had a salable value *after* the 2011 Decision. As she bore the burden of proof in these proceedings, we cannot conclude the court abused its discretion in finding that Hallston's failure to sell the horses was not a willful disregard of the 2011 Decision.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/22/19