J-A13004-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| DREW H. MILLETT | : | |
| | : | |
| Appellant | : | No. 505 MDA 2022 |

Appeal from the Judgment of Sentence Entered March 16, 2022
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0002626-2020

BEFORE:   BOWES, J., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                 **FILED: JULY 10, 2023**

Drew H. Millet appeals from the judgment of sentence of five and one-half to eleven years of incarceration following his convictions for two counts of aggravated assault and one count of simple assault.  We affirm.

We set forth the relevant facts from the trial court's opinion:

> The case arises out of an altercation between Appellant and a man named Paul Myers (hereinafter "victim"), which occurred during the early morning hours of July 19, 2020[, in the trailer park where they both lived].  At trial, both Appellant and victim testified and provided their respective versions of the events that occurred on the date in question.
>
>     . . . .
>
> Victim, who was [seventy-seven] years old at the time of the incident, testified that at around 1:00 a.m. on July 19, 2020, he decided to take his dog for a walk, as he often does at that time of the night.  Victim left his home, turned left on a sidewalk in

_____

[*] Former Justice specially assigned to the Superior Court.

front of his home, and began his walk with his dog. In so doing, victim walked past the home of Appellant, who lives two homes down from victim. As victim was proceeding past Appellant's home, Appellant, who appeared "boisterous" and "perturbed," emerged from his home, stood on the walkway between his home and the sidewalk, and began yelling at victim. Appellant accused victim's dog of urinating on his yard and threatened to kill the dog. Victim started walking backwards towards his car, which was about [twenty] feet from Appellant's home. Because he believed he did not have enough time to call the police, victim retrieved a can of pepper spray from the glove compartment of his car, all the while Appellant continued yelling "kill me, kill me, kill me."

Once he retrieved the pepper spray, victim and his dog proceeded again towards Appellant's home. Victim testified that he thought he was in imminent danger, and he believed that he could protect himself, his wife [who was not outside], and his dog by either pepper spraying Appellant or sending Appellant's attention "in a different direction." Victim, who remained on the sidewalk, attempted to talk to Appellant, but Appellant remained agitated and continued to make threatening remarks, and victim was unable to have a productive conversation with Appellant. This conversation attempt culminated with victim spraying Appellant with pepper spray, as Appellant was standing approximately two feet from where victim was on the sidewalk. After being sprayed, Appellant kicked victim's dog towards a nearby tree. As victim proceeded towards the tree where his dog was located, victim was struck over the head with something hollow, causing him to fall to the ground on top of his dog. As victim remained on the ground, Appellant continued to strike him about seven or eight times. Victim eventually emerged from the ground, feeling dizzy and wobbly, and as he took a step towards Appellant's home, Appellant appeared "from out of nowhere" and pushed victim into the ground in the middle of the street. Victim, whose glasses had been broken and who had lost a shoe, picked up his dog and went back to his home to call the police. Once police arrived, they dispatched an ambulance to take victim to the hospital.

. . . .

Appellant chose to testify in his defense. Appellant stated that during the time he lived in the trailer park, he had recurring issues with victim's and other residents' dogs walking on and relieving themselves on his property. This upset Appellant because it

- 2 -

destroyed his bushes and grass, his yard smelled strongly of urine, and his home was beginning to smell like his yard.

On the morning in question, Appellant observed on his surveillance camera that victim was approaching his home, and he decided to go out and confront victim about his dog. Appellant went outside his house and told victim to get his dog off Appellant's property and to stop walking the dog on Appellant's yard. Appellant and victim walked down the street a bit and argued back and forth. Appellant recalled that victim walked further down the street and retrieved something from his car. At this point, Appellant was concerned that victim may have been retrieving a gun, so he walked back towards his home and sat in a chair on his porch.

Later, victim returned to [the sidewalk in front of] Appellant's home, and Appellant left his porch and walked towards victim again. Shortly thereafter, victim sprayed Appellant with pepper spray. After Appellant was sprayed, he went to the top of his porch steps, which were about six to eight feet from victim and threw a garden tool and one or two flowerpots toward victim. At this point victim began moving forward towards a nearby tree. Victim began picking up the objects that were thrown at him, which prompted Appellant to believe that he needed to defend himself. At this point, which was about [thirty] seconds after he was initially pepper-sprayed, Appellant grabbed a metal-handled broom that was located by his front door, left his porch, and struck victim several times with the broom's handle. Appellant said after he noticed that the broom handle was bent, he threw it to the ground because he did not want to cut himself on the sharp metal edges.

After he had been struck with the broom, victim ran into a dark area between Appellant's tree and the trailer of Appellant's next-door neighbor. Appellant and victim squared up, and victim kicked Appellant in the leg. Appellant then hit victim in the body several times, and victim kicked Appellant's leg and "ran through" him towards the street. Once there, victim squared towards Appellant, who took two steps and punched victim. Appellant then landed on victim in the street. Appellant claimed that he fell on victim not because he leaped at him, but because his injured leg gave out. Once victim was down on the ground in the street, Appellant stated that he no longer felt threatened. Therefore, he got up,

retreated into his home, showered, changed his t-shirt, and sent an email to the Susquehanna Township Police to file a complaint.

On cross-examination, it was elicited that Appellant had observed victim and his dog walking on his property several times previously, but on those previous occasions, he was not in the mood to get dressed and go outside to confront victim. Appellant admitted that on the night of the pertinent incident, he was irritated and that he became increasingly angered by some of the "disrespectful" and "hurtful" things that victim said to him during the confrontation. Appellant admitted that victim never walked onto Appellant's private walkway, nor did he attempt to enter Appellant's porch or trailer. Appellant also admitted that he never saw victim with a gun or knife.

Trial Court Opinion, 6/24/22, at 2-5 (cleaned up).

Based on the foregoing, Appellant was charged with one count of aggravated assault and one count of terroristic threats and proceeded to a jury trial.[1] On January 2, 2022, amid trial, Appellant filed a motion requesting the trial court instruct the jury regarding self-defense, which the court denied.

Appellant was convicted and sentenced as indicated hereinabove. This timely appeal followed. Appellant and the trial court complied with Pa.R.A.P. 1925. Appellant raises the following issue on appeal: "Whether the trial court erred in denying the defense's request for self-defense jury instructions, when [Appellant] made out a *prima facie* case for self-defense, and the trial court erroneously denied the giving of the instruction despite [Appellant] meeting

_____

[1] The docket reflects that sometime prior to trial, the charges were amended to add additional counts of aggravated assault and simple assault and to remove the count of terroristic threats. This appears to have occurred with the filing of an amended information on May 12, 2021, but that filing is not included within the certified record. At trial, the jury considered in total two counts of aggravated assault and one count of simple assault.

his burden, thereby displacing the jury from its right to determine facts?"

Appellant's brief at 6.

In reviewing a challenge based on the trial court's refusal to give a specific jury instruction,

> it is the function of this Court to determine whether the record supports the trial court's decision. In examining the propriety of the instructions a trial court presents to a jury, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the Appellant was prejudiced by that refusal.

***Commonwealth v. Sandusky***, 77 A.3d 663, 667 (Pa.Super. 2013) (cleaned up).

Section 505 of Crimes Code provides the following concerning use of force in self-protection:

> **(a) Use of force justifiable for protection of the person.**—The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.
>
> **(b) Limitations on justifying necessity for use of force.**—
>
> . . . .
>
> (2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary

- 5 -

to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

(i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

(ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating, except the actor is not obliged to retreat from his dwelling or place of work, unless he was the initial aggressor or is assailed in his place of work by another person whose place of work the actor knows it to be.

18 Pa.C.S. § 505.

Thus, in order to successfully claim self-defense warranting a jury instruction, a defendant must point to evidence that would allow the jury to find three elements: (1) the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that the use of deadly force was necessary to prevent such harm; (2) the defendant did not provoke the incident which resulted in the use of force; and (3) the defendant did not violate any duty to retreat. *See Commonwealth v. Mouzon*, 53 A.3d 738, 740 (Pa. 2012). Although the defendant has no burden to prove self-defense, before the defense is properly at issue, there must be some evidence to justify such a finding. *Id*. at 740. "[A] valid claim of self-defense must be made out as a matter of law, and this determination must be made by the trial judge." *Commonwealth v. Hansley*, 24 A.3d 410, 420 (Pa.Super. 2011). The claim may consist of evidence from whatever source, including evidence adduced by the defendant as part of his case. *See id*. at 420-21. However, the

evidence must speak to all three elements of self-defense to be placed in issue for a jury's consideration. *See id*. at 421.

In denying Appellant's request for a self-defense instruction, the trial court determined that Appellant failed to establish two of the three elements articulated in *Mouzon*, *supra*. First, it found that no evidence showed that Appellant "was free from fault in provoking or continuing the difficulty which resulted in victim's injury." Trial Court Opinion, 6/24/22, at 9. Second, it maintained that the evidence evinced that Appellant violated a duty to retreat or avoid the danger that ultimately prompted Appellant to strike victim with the broom handle. *See id*. at 10. Appellant challenges both of the trial court's determinations on appeal.

Concerning the provocation of force, the court summarized the relevant evidence as follows:

> [T]he initial altercation began when Appellant emerged from his home at 1:00 a.m. and began yelling at victim, who was merely walking his dog past Appellant's property. Moreover, the evidence establishes that after victim returned to Appellant's property after retrieving the pepper spray from his car, Appellant, instead of remaining on his porch, walked out towards the victim. Finally, even after he had been pepper-sprayed, instead of choosing to cease the confrontation, Appellant began to throw objects at victim, which continued the difficulty that ultimately led to victim being repeatedly struck with the broom handle that caused his injuries.

*Id*. at 9-10. From the above, the court concluded that based on all the evidence, Appellant either was not free from fault in provoking the incident,

- 7 -

or that he continued the difficulty that resulted in victim's injuries. ***See id***. at 9-10.

In his brief, Appellant argues that "[t]he trial court erroneously assign[ed] fault and displaced the jury in determining whether [Appellant] was in fact free from fault." Appellant's brief at 22. He states that the court erred in making factual findings that "[Appellant] was yelling, that there was no reason for the altercation, and [Appellant]'s subsequent walking down of his porch and subsequent pepper-spraying was his own fault." ***Id***. at 22-23. He also avers that the source of the conflict was the pepper-spraying by victim, which the court failed to address. ***Id***. at 24-25. Appellant characterizes the evidence as showing that when he confronted victim, he was only speaking in a forceful, nonthreatening manner, which would not constitute sufficient provocation to be attacked. ***See id***. at 23. As such, Appellant believes he met his burden and that the provoking party was a question of fact to be determined by the jury.[2] ***See id***. at 25.

_____

[2] As part of this argument, Appellant cites ***Commonwealth v. Young***, 412 A.2d 159 (Pa.Super. 1979) for the proposition that "[w]hether an actor is the instigator is a question of fact for the factfinder." ***See*** Appellant's brief at 22. We do not agree with Appellant's interpretation of ***Young***. There, this Court addressed whether a trial court's instruction to the jury concerning use of force for protection of property pursuant to 18 Pa.C.S. § 507 was adequate and correct as given. We did not consider whether a justification defense was sufficiently presented for a jury's consideration. Additionally, the facts of ***Young*** are materially distinguishable from the instant matter. ***See Young***, ***supra*** at 160-61 (defendant shot a trespasser, wherein testimony from various individuals on scene differed in how the altercation began and the circumstances of the fatal shot, as well as the extent of prior interactions and threats exchanged between the defendant and the victim).

After review, we find that the trial court did not commit either a clear abuse of discretion or an error of law in denying Appellant's request for a self-defense jury instruction. We are mindful that Appellant need only show "any evidence from whatever source" to support the self-defense element that he was "free from fault in provoking or continuing the difficulty." ***Commonwealth v. Mayfield***, 585 A.2d 1069, 1071 (Pa.Super. 1991) (*en banc*) (cleaned up). Although this is a low burden of production, the court correctly determined that there was no evidence at trial supporting a finding that Appellant was faultless in initiating or aggravating the encounter.

The uncontradicted testimony was that victim was walking his dog in the early morning hours until accosted by Appellant. Appellant emerged from his house and proceeded to the sidewalk, where victim was standing, to confront him. Appellant and victim had never spoken to each other before. Then, the two began arguing with each other, with Appellant following victim down the street. ***See*** N.T. Trial, 2/2/22, at 249-52. It was only after this occurrence that victim backed away from Appellant's house toward his car to retrieve the pepper spray. There was no evidence suggesting that anything other than Appellant's acts of arguing with and following victim is what caused victim to take further action. It is irrelevant that Appellant classifies the initial engagement as "arguing," as opposed to the "yelling" described by the trial court, because there was simply no evidence that could have supported a jury determination that Appellant's decision to confront the victim at 1:00 a.m. was not the but-for cause of the difficulty.

Moreover, even assuming that the encounter in question began with the victim pepper-spraying Appellant, as he contends, this does not afford him relief. Appellant testified that he believed victim may have retrieved a firearm from the vehicle, so Appellant went back to his porch to sit in a chair. He conceded that the spraying occurred only after he left his porch a **second** time to confront victim, who was again standing on the sidewalk. Based on Appellant's own version of events, he voluntarily intensified the situation by walking into his yard to within two feet of victim and confronting him, instead of ending the encounter by remaining on the porch or entering into his home.[3] In sum, we find no error with the trial court's conclusion that there was no evidence before the jury that would have allowed it to conclude that Appellant was not the provoking agent. The court's decision to deny the self-defense instruction was not an omission "tantamount to fundamental error," nor did this refusal prejudice Appellant. *See Sandusky*, *supra* at 667.

Appellant further argues that the trial court improperly usurped the jury's fact-finding function in deciding whether he satisfied the threshold inquiry of raising self-defense. We disagree. Appellant neglects the fact that as a matter of law, the court was required to determine whether the elements of self-defense were properly asserted. *See Hansley*, *supra* at 420. In doing so, the court considered testimony from all of the witnesses. Our review does

---

[3] We note that Appellant testified that while he was "concerned" victim was retrieving a gun from his car, Appellant did not feel "threatened" at any point during the encounter until he was pepper-sprayed. *See* N.T. Trial, 2/2/22, at 257-58.

not reveal that the court assessed Appellant's credibility or otherwise disbelieved his testimony as a matter of denying Appellant's request. ***See***, ***e.g.***, ***Commonwealth v. Rivera***, 983 A.2d 1211, 1221 (Pa. 2009) (determining that the burden of disproving self-defense cannot be met solely through a fact finder's disbelief of the defendant's testimony). Moreover, Appellant does not articulate any findings by the court predicated on its disbelief of Appellant's testimony. Rather, as summarized above, there was simply "no evidence from any source" demonstrating that Appellant did not provoke victim's use of force against him. ***Mayfield***, ***supra*** at 1071. Accordingly, the trial court did not err in denying Appellant's request for a self-defense jury instruction for that reason.[4]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/10/2023

---

[4] Since we affirm the trial court's denial of a self-defense jury instruction on the basis that the evidence demonstrated Appellant provoked the use of force against himself, we do not address Appellant's challenge to the court's contention that Appellant violated a duty to retreat.