**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMAAL LANIER COOK | : | |
| | : | |
| Appellant | : | No. 751 WDA 2019 |

Appeal from the Judgment of Sentence Entered April 18, 2019
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0000459-2018

BEFORE: NICHOLS, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MURRAY, J.:                    **FILED APRIL 3, 2020**

Jamaal Lanier Cook (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of persons not to possess firearms, firearms not to be carried without a license, possession of a firearm with altered manufacturer's number, and possession of a controlled substance.[1] We affirm.

The trial court summarized the underlying facts as follows:

In January [] 2018, Detective Thomas Patton of the City of Connellsville Police Department was working on an ongoing drug trafficking investigation into a residence located at 109 Gibson Terrace, Connellsville, Fayette County, Pennsylvania. Multiple controlled buys had been made from the residence. During these controlled buys, crack cocaine and heroin were purchased. Through the investigation, the police learned that a white Chevrolet sedan was going to travel to Pittsburgh from 109 Gibson Terrace on January 29th, 2018. Detective Patton went to 109

---

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), 6110.2; 35 P.S. § 780-113(a)(16).

Gibson Terrace on that date in an unmarked Connellsville Police unit and observed the vehicle backed into a parking spot in front of Unit 109. Detective Patton observed two males enter the vehicle. The driver was … James Rosenberry, known to Detective Patton through his ongoing investigation[,] and the passenger was a tall man later identified as [] Andre Randolph. The vehicle then left Gibson Terrace. Detective Patton followed the vehicle for some time through the City of Connellsville and observed that the vehicle had an out-of-state license plate.

Detective Patton set up an operational plan to proceed with the investigation later that night. [Detective] Patton and Corporal Hominsky, working with the Fayette County Bureau of Investigations, set up at the New Stanton Interchange of the [Pennsylvania] Turnpike[,] where they were able to observe the Chevrolet pass through the toll booth on its return to Connellsville. A traffic stop was conducted in Connellsville Township … by Corporal Kendi. Detective Patton [arrived at the scene of the stop,] exited his vehicle and approached the Chevrolet. James Rosenberry was the driver. Mr. Randolph was still seated in the front passenger seat. Appellant was seated in the back seat.[2]

A strong odor of marijuana was detected from the vehicle. Mr. Randolph admitted to having smoked marijuana. Due to the odor of marijuana and the circumstances involving 109 Gibson Terrace, [] Appellant and the other occupants of the vehicle were detained and taken to the Connellsville Police Station.

Mr. Rosenberry gave the officers consent to search the vehicle. Corporal Hominsky and Fayette County Bureau of Investigation Detective Stephenson conducted the search. A large coat was found [lying on] the backseat where Appellant had been seated. Inside the coat, a loaded pistol was found. Additionally, sixteen [] stamp bags of heroin were located inside one of the

---

[2] Appellant was seated behind the driver's side seat, and was the only passenger in the rear. Corporal Hominsky observed the position in which Appellant was seated prior to removing him from the sedan.

pockets of the coat.[3]

Trial Court Opinion, 7/23/19, at 2-4 (footnotes added; citations to record omitted).

Following Appellant's arrest, the Commonwealth charged him with the above firearm and drug crimes. Prior to trial, the defense sought discovery, demanding that the Commonwealth disclose, *inter alia*, any exculpatory evidence. In June 2018, Appellant filed an omnibus pretrial motion (OPT motion), requesting that the trial court suppress all evidence seized from the vehicle following the allegedly illegal traffic stop.

On October 30, 2018, the trial court conducted a hearing on Appellant's OPT motion (OPT hearing), at which Detective Patton and Corporal Hominsky testified. Relevant to this appeal, Corporal Hominsky testified about the location of the coat/jacket discovered in the vehicle:

> A. [Corporal Hominsky]: … I actually pulled [Appellant] from the … vehicle and he was in the back driver side of the … vehicle, back passenger seat.
>
> Q. [The prosecutor]: Was he the only rear passenger?
>
> A. [Corporal Hominsky]: Yes.
>
> Q. [The prosecutor]: And is that vicinity the same that you located this jacket?

---

[3] The police did not discover any contraband on Appellant's person; rather, it was all in the coat (sometimes referenced by the trial court and the parties as "the jacket"), and there was nothing else inside the coat, such as a wallet, to indicate ownership of the coat.

A. [Corporal Hominsky]:  Yes, I believe the jacket was like, if you're in the back passenger seat on the driver side, it was directly beside that seat, like where the center area would be.

\* \* \*

A. [Corporal Hominsky]: … [The jacket] was just open in the backseat, it wasn't … folded or anything like that, it was just sitting, laying in the backseat open.

Q. [The prosecutor]:  Right next to where [Appellant] had been sitting?

A. [Corporal Hominsky]:  Directly.  If he wasn't sitting on part of it.

N.T., 10/30/18, at 26-27.

The trial court then questioned Corporal Hominsky:

BY THE COURT:  And the jacket was where, to [Appellant's] right?

A. [Corporal Hominsky]:  Yeah, it would be directly, if you were sitting in the seat, the window would be to his left and the jacket would be on his right.

[THE COURT]: And where was all this other stuff that you said there was so much of in the car that it was a wonder that someone could fit back there?[4]

A. [Corporal Hominsky]:  On the opposite side of [Appellant], I just don't believe that somebody could sit on [the rear passenger's] side….

\* \* \*

---

[4] The court was referring to Corporal Hominsky's earlier testimony that "[t]he backseat was completely full [of items, including garbage, clothing and electronics].  … I don't think even a person could sit on the [] rear passenger side."  N.T., 10/30/18, at 28.

- 4 -

A. [Corporal Hominsky]: … [S]o the only area for an occupant to sit would be behind the driver, just because of the amount of items back there.

*Id.* at 30 (footnote added).

At the conclusion of the OPT hearing, the trial court denied the OPT motion, and the matter proceeded to a two-day jury trial.[5] On direct examination, the prosecutor questioned Corporal Hominsky about the location of the jacket:

Q. [The prosecutor]: While you're standing, will you orient the jacket the same way for the jury's perspective that you observed it while [Appellant] was in the car please?

A. [Corporal Hominsky]: [(demonstrating)]

\* \* \*

[THE COURT]: … For the record, you were showing, it looked like as though if you were seated you'd be seated right in front of the jacket?

A. [Corporal Hominsky]: Yes. If [Appellant] was sitting in the rear seat behind the driver[,] sitting oriented exactly how I am, this is how the jacket would be at the seat portion.

[THE COURT]: And for the record, you have the jacket just sort of behind you on a seat?

A. [Corporal Hominsky]: Yes. In between [Appellant] and the back-seat part.

[THE COURT]: Very well.

A. [Corporal Hominsky]: It would be against your back.

_____

[5] The defense was provided with a copy of the transcript from the OPT hearing prior to trial.

N.T., 4/1-2/19, at 46-47; ***see also id.*** at 44 (Corporal Hominsky testifying

that "if you took [the jacket] off it would just be around a person[.]").

On cross-examination, defense counsel questioned Corporal Hominsky

as follows:

Q. [Defense counsel]:  And, there would be, I believe, would you agree that there was pretty much nowhere to sit in the backseat other than where [Appellant] was sitting?

A. [Corporal Hominsky]:  Yes.

* * *

Q. [Defense counsel]:  Where was the jacket whenever you approached the vehicle?

A. [Corporal Hominsky]:  Right behind [Appellant] in the same seat as I oriented it[, *i.e.*, in Corporal Hominsky's courtroom demonstration].

***Id.*** at 54, 57.  Defense counsel then questioned Corporal Hominsky in

reference to his prior testimony at the OPT hearing, and used the transcript

from that proceeding to refresh his memory, and impeach him on certain

matters.[6]  ***See id.*** at 54-55 (pointing out that Corporal Hominsky replied in

the affirmative to the following question at the OPT hearing, "other than being

… close to [Appellant], where he was seated, there's nothing to connect

_____

[6] Importantly, defense counsel did not question Corporal Hominsky about any purported inconsistencies concerning the location of the jacket in his respective testimony at trial and the OPT hearing.

[Appellant] to the jacket?"). After redirect,[7] the trial court excused Corporal Hominsky, and the proceedings ended later that day when the Commonwealth completed its case-in-chief. *See id.* at 59, 84.

At the beginning of the second day of trial, Appellant's counsel moved for a mistrial outside of the presence of the jury. Counsel objected to the "changing nature" of the testimony of Corporal Hominsky concerning the location of the jacket. *See id.* at 85-87; *see also id.* at 85 (objecting that "the testimony of Corporal Hominsky at the OPT [hearing was] that the jacket was in the seat next to [Appellant,] and then yesterday[,] while [Corporal Hominsky] was testifying and doing a demonstration[,] he basically had the [jacket] wrapped around him in the seat[,] so [the defense was] unprepared to defend against that" change in testimony). Alternatively, defense counsel requested that the trial court permit the defense to recall Corporal Hominsky (the recall witness motion) so that he could be impeached with his prior testimony at the OPT hearing. *See id.* at 85.

After hearing argument, the trial court denied Appellant's motion for a mistrial, stating that defense counsel had an opportunity to impeach Corporal Hominsky on cross-examination. *Id.* at 88. The court also denied the recall witness motion, stating that defense counsel "had the opportunity to ask

---

[7] The prosecutor elicited testimony from Corporal Hominsky that neither of the other two occupants had access to the backseat area. *See* N.T., 4/1-2/19, at 58.

[Corporal Hominsky] any questions regarding the OPT [hearing] transcript yesterday." *Id.* At the close of trial, the jury convicted Appellant of all charges.

On April 18, 2019, the trial court imposed an aggregate sentence of 3 to 6 years in prison. Appellant timely filed a notice of appeal. The trial court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and he complied. The court then issued a Rule 1925(a) opinion.

Appellant presents three issues for our review:

1. WAS [APPELLANT] PREJUDICED AFTER THE COMMONWALTH INTRODUCED EVIDENCE AGAINST HIM AT TRIAL THAT WAS NOT DISCLOSED TO [APPELLANT] THROUGH DISCOVERY[?]

2. DID THE TRIAL COURT ERR IN DENYING [APPELLANT'S] MOTION FOR MISTRIAL WHEN THE COMMONWEALTH PRESENTED MATERIAL EVIDENCE NOT PROVIDED TO [APPELLANT] THROUGH DISCOVERY, SPECIFICALLY, THE LOCATION AND ORIENTATION OF A JACKET[?]

3. DID THE TRIAL COURT ERR IN DENYING [APPELLANT] THE RIGHT TO RECALL A COMMONWEALTH WITNESS[?]

Appellant's Brief at 8.

In his first issue, Appellant argues that he was deprived of his right to due process and a fair trial because the Commonwealth improperly introduced prejudicial evidence at trial that it failed to disclose during discovery. *See id.* at 11-15. Specifically, Appellant points to the alleged discrepancies in the testimony of Corporal Hominsky regarding the location of the jacket in the backseat of the vehicle. *See id.* at 12

- 8 -

We must first address whether Appellant has preserved this issue for appellate review. It is well established that "an appellant's concise statement must properly specify the error to be addressed on appeal." *Commonwealth v. Hansley*, 24 A.3d 410, 415 (Pa. Super. 2011) (citation omitted). "When the appellant provides a concise statement which is too vague to allow the trial court an opportunity to identify the issues raised on appeal, he/she has provided the functional equivalent of no [c]oncise [s]tatement at all." *Commonwealth v. Cannon*, 954 A.2d 1222, 1228 (Pa. Super. 2008) (citations omitted); *see also* Pa.R.A.P. 1925(b)(4)(ii) (providing that "[t]he Statement shall concisely identify each ruling or error that the appellant intends to challenge *with sufficient detail to identify all pertinent issues for the judge*." (emphasis added)). "The court's review and legal analysis can be fatally impaired when the court has to guess at the issues raised. Thus, if a concise statement is too vague, the court may find waiver." *Hansley*, 24 A.3d at 415 (citation omitted).

Here, Appellant's concise statement failed to specify the evidence that the Commonwealth allegedly failed to disclose in discovery. Based on this deficiency, the trial court determined that Appellant's concise statement was too vague to allow proper review of Appellant's claim, and thus, he waived this claim. *See* Trial Court Opinion, 7/23/19, at 4; *see also id.* (asserting "this [c]ourt is reluctant to search the record and speculate as to the specific nature of the issue that Appellant is attempting to raise."). Upon review, we

agree with the trial court's determination, and conclude that Appellant has waived his first issue. *See Hansley*, *supra*.[8]

In his second issue, Appellant asserts that the trial court erred by denying the defense's motion for a mistrial, where:

(1) the Commonwealth committed an "obvious" discovery violation, *i.e.*, in failing to disclose the discrepancies in the testimony of Corporal Hominsky as to the location of the jacket; and

(2) The change in Corporal Hominsky's testimony caused the defense significant prejudice and unfair surprise.

Appellant's Brief at 16-20.

[T]he decision to declare a mistrial is within the sound discretion of the trial court and will not be reversed absent a flagrant abuse of discretion. A mistrial is an extreme remedy that must be granted only when an incident is of such a nature that its unavoidable effect is to deprive defendant of a fair trial.

Under Pennsylvania Rule of Criminal Procedure 605, relating to mistrial, "[w]hen an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion **shall** be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity." Pa.R.Crim.P. 605(B) (emphasis added); *see also* [*Commonwealth v.*] *Szakal*, 50 A.3d [210,] 219 [(Pa. Super. 2012)] (noting that the appellant's claim was waived because the appellant waited a substantial period before moving for mistrial)[.]

*Commonwealth v. Radecki*, 180 A.3d 441, 457 (Pa. Super. 2018) (some citations omitted).

_____

[8] Nevertheless, we note that Appellant relates this claim in connection with his second issue, which we address on merits.

- 10 -

Before we reach the merits of this issue, we address whether Appellant properly preserved it pursuant to Pa.R.Crim.P. 605(B). In its opinion, the trial court determined that Appellant waived his right to request a mistrial on this basis, and we agree. **See** Trial Court Opinion, 7/23/19, at 6; **see also** **Szakal**, 50 A.3d at 219. Furthermore, the timing of Appellant's mistrial motion is essentially immaterial, as he is not entitled to relief on the merits.

Contrary to Appellant's assertion, there was no "manifest necessity' for a mistrial; he received a fair jury trial. Although there were admittedly some discrepancies in Corporal Hominsky's testimony at trial and the OPC hearing concerning the precise location of the jacket,[9] such discrepancies were minor. During both proceedings, he testified consistently that (1) Appellant was the only backseat passenger, and seated on the driver side; (2) the amount of clutter in the rear impacted the seating capacity, including that of Appellant; and (3) the jacket was located in the backseat, in *direct proximity* to Appellant. **See** N.T. (OPT hearing), 10/30/18, at 26-27, 28, 30; N.T. (trial), 4/1-2/19, at 44, 46-47, 54, 57, 58. Indeed, contrary to Appellant's claim, Corporal Hominsky presented testimony at *both* proceedings that the jacket would have been "on" or "around" Appellant in the backseat. **See** N.T., 10/30/18, at 27

---

[9] For example, at the OPC hearing, Corporal Hominsky testified that the jacket was "directly" to Appellant's "right" on the backseat, whereas he testified at trial that the jacket was "right behind" Appellant. **See** N.T., 10/30/18, at 30; N.T., 4/1-2/19, at 57.

(testifying that Appellant may have been "sitting on part of" the jacket); N.T., 4/1-2/19, at 44 (testifying that "if you took [the jacket] off it would just be around a person[.]"). These accounts are nearly identical. Further, it was the responsibility of defense counsel to thoroughly cross-examine Corporal Hominsky on any relevant matter, including any purported inconsistencies in his testimony. Additionally — and contrary to Appellant's assertion — minor discrepancies in the testimony did not constitute unfair surprise. Finally, there is no merit to Appellant's claim that there is a manifest necessity for a mistrial in light of the Commonwealth's purported discovery violation, because (1) Appellant was aware, prior to trial, that the Commonwealth consistently maintained that the jacket was in direct proximity to Appellant in the backseat; and (2) the Commonwealth could not reasonably anticipate the minor changes in Corporal Hominsky's testimony at trial. Thus, the trial court did not err in denying Appellant's motion for a mistrial.

In his final issue, Appellant contends that even if a mistrial was not warranted, the trial court committed reversible error by denying his recall witness motion concerning Corporal Hominsky. *See* Appellant's Brief at 21. We disagree.

Our standard of review of this claim is well established: "The decision of whether a party may be recalled is, under Pennsylvania law, left to the trial court's discretion. The decision is not reversed unless it constitutes a 'very

gross abuse of discretion.'" **Commonwealth v. Tighe**, 184 A.3d 560, 572 (Pa. Super. 2018) (citation omitted).

Here, in denying the recall witness motion, the trial court emphasized that defense counsel had a copy of the transcript from the OPT hearing and cross-examined Corporal Hominsky in reference to his prior testimony, and had the ability to impeach Corporal Hominsky on any inconsistent statements that he may have made concerning the location of the jacket. **See** N.T., 4/1-2/19, at 86.

Additionally, the trial court explained:

[H]ad [defense] counsel made the [recall witness motion] at or around the same time [that Corporal] Hominsky was excused[, *i.e.*, during the middle of the first day of trial], our ruling may have been different. However, the [c]ourt saw no reason to delay the trial any further when counsel was given a full, fair and unlimited opportunity to cross-examine the witness the day before.

Trial Court Opinion, 7/23/19, at 7. We are persuaded by the trial court's rationale, and under these circumstances, we cannot conclude that the court's denial of the recall witness motion rises to the level of a "very gross" abuse of discretion. **See Tighe**, **supra**. Thus, Appellant's final issue lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/3/2020