J-S01030-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RAMON VASQUEZ | : | |
| | : | |
| Appellant | : | No. 828 MDA 2020 |

Appeal from the PCRA Order Entered May 27, 2020
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0004053-2014

BEFORE:   LAZARUS, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McCAFFERY, J.:                    **FILED JUNE 23, 2021**

Ramon Vasquez (Appellant), appeals from the order entered in the Berks County Court of Common Pleas, denying his first Post Conviction Relief Act[1] (PCRA) petition.  Appellant was previously found guilty by a jury of simple assault and aggravated assault,[2] committed against his prison cellmate.  On appeal, Appellant avers the PCRA court erred in denying relief on his claims that trial counsel was ineffective for: conceding his guilt to simple assault in closing argument; not requesting a self-defense or justification jury instruction; and failing to investigate potential witnesses for trial.  Appellant

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

[2] 18 Pa.C.S. §§ 2701(a)(1), 2702(a)(1).

further contends the PCRA court erred in denying relief of his claims of prosecutorial misconduct at trial. We affirm.

## I. Facts & Procedural History

The underlying incident occurred while Appellant was an inmate at Berks County Prison.[3] The PCRA court summarized the facts:

> On June 27, 2014, [Appellant] and Alexis Betancourt [(the Victim)] were cellmates. [Appellant] attacked [the Victim], pulling him off the top bunk of the bunk bed, with a length of material. There was an ongoing struggle. The injuries suffered by [the Victim] were a closed fracture of the nose and nasal bone, ligature marks around his neck, a black eye, broken teeth and scratches.

PCRA Ct. Op. at 3 (unpaginated).

Pennsylvania State Trooper Jacob Shelak investigated the incident. Appellant told him that "he was defending himself" against a sexual assault by the Victim. N.T. Jury Trial, 6/9/15, at 71. Appellant was charged with attempted murder,[4] aggravated assault, and simple assault.

The case proceeded to a jury trial on June 9, 2015. Appellant was represented by Kurt Geishauser, Esquire (Trial Counsel). The Commonwealth's theory of the case was that Appellant attacked the Victim in retaliation for an incident between the Victim and another inmate, Israel

---

[3] According to Appellant, he was serving a sentence of nine months to two years' incarceration, under trial docket CP-06-CR-4704-2013. Appellant's Brief at 7-8.

[4] 18 Pa.C.S. §§ 901(a), 2502.

Bracero. The Commonwealth posited that Bracero stabbed the Victim with a shank, the Victim told his Wife to call the prison and report the shank, and the shank was found in Bracero's cell "one or two days before this incident." N.T. Jury Trial at 121.

The Commonwealth first called the Victim, who testified he was in his bunk bed with his eyes closed. N.T Jury Trial at 25. Appellant pulled the Victim down, choked his neck with a sheet torn into strips, and repeatedly said "that snitches have to die." *Id.* at 25-26. The Victim was able to get away and asked why Appellant was doing this. *Id.* at 26. Appellant laughed and said "he was playing," but "all of a sudden," Appellant pinned the Victim against the wall and started choking him again. *Id.* at 27. The two wrestled while Appellant continued to use the sheet to choke the Victim. *Id.* The sheet moved toward the Victim's mouth, injuring his tooth. *Id.* The attack lasted 40 minutes. *Id.* at 25-26. At 8:00 p.m., the door to their cell opened, and the Victim immediately ran out to the officers. *Id.* at 29.

Corrections Officer Matthew Almquist, who was on duty at the prison at the time of the incident, testified to the following. N.T. Jury Trial, 6/9/15, at 42. At 8:00 p.m., he unlocked the cell doors on the J-block for the inmates' recreation period. *Id.* at 44. He did not "see what was going on in" Appellant and the Victim's cell before he unlocked the doors. *Id.* at 45. About 10 seconds after unlocking the doors, the Victim "rapidly approached" Officer Almquist's desk and said, "I want off this block. I want [protective custody].

- 3 -

My cellie tried to kill me." *Id.* at 45-47. The Victim "had marks on his neck, a lot of blood from his mouth, swelling on his face, [and] lots of laceration scratches, et cetera, on his neck[ and] face." *Id.* at 45.

Sergeant Kathryn Krulac testified that she investigates "allegations," including the instant incident, at the prison. N.T. Jury Trial at 55. Pertinent to his appeal, we note the following examination by the Commonwealth as to when the shank was found in Bracero's cell:

> [Commonwealth:] Was there a time prior to June 27th of 2014, **maybe a day or two beforehand**, that contraband was found in the prison?
>
> [Sergeant Krulac:] Yes, sir.
>
> Q. Are you aware of where that information came from?
>
> * * *
>
> A. It came from [the Victim].
>
> Q. [S]pecifically, what contraband was found?
>
> A. There was what we refer to as a shank, jailhouse-made weapon. That was found in another inmate's cell on J unit.
>
> * * *
>
> Q. [W]hen was that found?
>
> * * *
>
> Q. . . . How . . . many days prior to June 27th?
>
> A. It was **approximately a day or two**.

N.T. Jury Trial at 62-63 (emphases added).

Appellant testified in his defense to the following. He was laying in the bottom bunk and when he "woke up, [the Victim] was on top of" him. N.T. Jury Trial at 80, 83. The Victim "had his pants halfway down and his penis was erect." *Id.* at 80. Appellant tried to push the Victim away, wrestled him to the floor, and grabbed the Victim's shirt, which "got caught in [the Victim's] mouth." *Id.* They fought for five minutes until the Victim stopped. *Id.* at 80, 82. The Victim, "being caught in the act," apologized, stated he would ask to go to protective custody, and asked Appellant not to say anything. *Id.* at 81. They "stood like that for about 20, 30 minutes" and when the cell door opened, the Victim put a towel over his head and walked out. *Id.* at 81.

Appellant also testified about why the Victim attacked him. Another inmate, Bracero, had stabbed the Victim in the face. N.T. Jury Trial at 83. Appellant told the Victim to report it and seek medical attention, but the Victim "said, No, I don't want to be labeled a snitch." *Id.* The next day, the Victim said, "I'm going to get the guy back," but Appellant tried "to be the peacemaker," told the Victim "to chill out," and talked to Bracero as well. *Id.* The Victim was then "mad at" Appellant for telling Bracero. *Id.* "[A] while later," officers searched Bracero's cell and found the weapon used to stab the Victim. *Id.* The Victim told Appellant he asked his (the Victim's) wife to "tell the jail that there's a weapon in this certain cell." *Id.* at 84. After this incident, the Victim's behavior changed and he started to make "homosexual innuendos" to Appellant. *Id.* Appellant also claimed that when he went "to

court on a separate issue," an inmate told him the Victim was putting "pysch medicine" in Appellant's food and raping him when he was unconscious "because he thought [Appellant was] spreading rumors about him." *Id.* at 85. Appellant testified he had seen blood in his feces and asked "medical" about it, but was told he was too young for prostate issues. *Id.* at 84.

Finally, during cross-examination, the Commonwealth asked Appellant if the shank was found in Bracero's cell the day before the incident, in this case, with the Victim. N.T. Jury Trial at 89. Appellant responded, "No, this happened June 8th," and it was from June 8th to June 27th that he "noticed a change in [the Victim's] behavior." At 89-90. *Id.* We note that **post**-trial, the parties and the PCRA court learned this incident in fact occurred on June 10, 2014.[5]

In closing argument, Trial Counsel presented various arguments, with specific references to the evidence, that there was reasonable doubt that

---

[5] In litigation of the underlying PCRA petition, Appellant served a subpoena on the Berks County Prison, for the production of inmate Bracero's disciplinary records. *See* N.T. Hearing, 11/8/18, at 3. The Commonwealth filed a motion to quash Appellant's subpoena. At a hearing on November 18, 2018, the PCRA court conducted an *in camera* review of the records and found the only relevant information was the date of the prior incident involving Bracero and the shank — June 10, 2014. *Id.* at 23. Nevertheless, the court concluded Appellant, who was *pro se* at the hearing, failed to establish exceptional circumstances for release of the records, and accordingly granted the Commonwealth's motion to quash the subpoena. *Id.* *See* 42 Pa.C.S. § 9545(d)(2) ("No discovery, at any stage of proceedings under this subchapter, shall be permitted except upon leave of court with a showing of exceptional circumstances.").

- 6 -

Appellant had specific intent to kill the Victim or intent to commit aggravated assault. N.T. Jury Trial at 117. Pertinently, at the end of the closing argument, counsel stated: "What I submit here, if you believe [Appellant's] story he was justified, if you think this was just an altercation between two cellmates who for whatever reason got in some kind of altercation, **at best it's simple assault**. That's all that happened." *Id.* (emphasis added).

The jury found Appellant not guilty of attempted murder, but guilty of aggravated assault and simple assault. The trial court separately found him guilty of harassment.[6] N.T. Jury Trial at 136. Following trial, Appellant was permitted to proceed *pro se*. On October 10, 2015, the trial court sentenced Appellant to five to 20 years' imprisonment for aggravated assault.

Appellant then filed a *pro se* motion for a new trial, and while it was pending, filed a *pro se* notice of appeal. On April 29, 2016, this Court dismissed the appeal as premature in light of the pending post-sentence motion.[7] *Commonwealth v. Vasquez*, 426 MDA 2016 (order) (Pa. Super. 2016).

---

[6] 18 Pa.C.S. § 2709(a)(1).

[7] The trial docket, however, does not indicate there was any ruling on Appellant's post-sentence motion.

## II. PCRA Petition

On October 14, 2016, Appellant filed the instant, timely, first PCRA petition. He averred, *inter alia*, that Trial Counsel was ineffective for: conceding, in closing argument, Appellant's guilt to simple assault; failing to investigate potential witnesses, including eyewitness inmate Shawn Cicero and responding Corrections Officer Keith Eckenrode; and not requesting jury charges for self-defense and justification. The petition also alleged prosecutorial misconduct in the Commonwealth's improperly soliciting testimony from Sergeant Krulac that the shank incident between the Victim and Bracero occurred one or two days before the incident in this matter, where the prior incident in fact occurred 17 days earlier.

Counsel was appointed on October 14, 2016, but on December 26, 2017, Appellant filed an amended *pro se* PCRA petition. On April 24, 2018, 18 months after the appointment, the PCRA court granted counsel's petition to withdraw from representation.

On February 8, 2019, the PCRA court appointed current counsel, Michael Dautrich, Esquire, to represent Appellant. Counsel did not file any amended petition, but the court conducted an evidentiary hearing on January 30, 2020. Appellant, Trial Counsel, and Shawn Cicero (Appellant's proposed trial witness) testified.

On May 27, 2020, the PCRA court issued the instant order, denying Appellant's PCRA petition. Appellant filed a timely notice of appeal and, in

response to the PCRA court's Pa.R.A.P. 1925(b) order, filed a concise statement of errors complained of on appeal.[8]

## III.  Questions Presented

On appeal, Appellant presents the following claims of Trial Counsel's ineffectiveness and prosecutorial misconduct:

A.  Whether the PCRA court erred in dismissing the amended PCRA petition when Trial Counsel was ineffective in violation of the Sixth and Fourteenth Amendments to the United States Constitution, PA. Constitution Article I § 9 for the following reasons:

1. Trial counsel conceded Appellant's guilt to Simple Assault at the time of trial without getting Appellant's permission to do so, which directly contradicted Appellant's claim of self-defense and undermined Appellant's credibility in the eyes of the jury.

2. Trial counsel failed to request self-defense and justification jury instructions at the time of Appellant' jury trial, which directly contradicted Appellant's claim of self-defense and undermined Appellant's credibility in the eyes of the jury.

3. Trial counsel failed to investigate and call witnesses Shawn Cicero, Jr. and Keith Eckenrode at trial.

4. Trial counsel failed to investigate evidence pertaining to prison phone calls made by [the Victim] and evidence

_____

[8] The PCRA court's Rule 1925(b) order, issued on June 12, 2020, directed Appellant to file a statement within 21 days, or by Monday, July 6th. Appellant's Rule 1925(b) statement, however, was not filed until July 20th. Nevertheless, we note all of these dates fell within the Berks County Court of Common Pleas' ongoing COVID-19 judicial emergency. **See** Supplemental Emergency Order, No. 20-3264, 6/30/20, Supreme Court Docket 53 MM 2020; Supplemental Emergency Order for June, 2020, No. 20-3264, 6/1/20, Supreme Court Docket 53 MM 2020.  Accordingly, the Rule 1925(b) statement was timely filed.

of an altercation between [the Victim] and Israel Bracero in June of 2014 and was unable to refute the theory of the Commonwealth at trial that Appellant assaulted [the Victim] in retaliation for the [the Victim]/Bracero incident.

5. The cumulative effect of trial counsel's ineffective assistance at trial entitles Appellant to a new trial.

B. Whether the PCRA court erred in dismissing the amended PCRA petition when the Assistant District Attorney at trial mischaracterized evidence, which violated Appellant's rights to a fair trial and due Process under the Sixth and Fourteenth Amendments to the United States Constitution, because the ADA knew at the time of trial that the shank used in Bracero's assault on [the Victim], which preceded the June 27, 2014 incident between [the Victim] and Appellant, was discovered on June 10, 2014, not a day or two before June 27, 2014, and the ADA intentionally led Sergeant Krulac to answer a leading question that the shank was discovered within a day or two of the incident between Appellant and [the Victim], which was clearly designed to prejudice Appellant at trial, was totally incorrect, and was further emphasized and used to the advantage of the Commonwealth in the closing argument of the ADA highlighted above wherein he hammered home the point that this contraband was discovered only a day or two before the incident between [the Victim] and Appellant in an effort to illustrate to the jury that Appellant attacked [the Victim] in retribution or retaliation for [the Victim] snitching on Bracero about the shank.

Appellant's Brief at 2-4.

## IV. General Law

"Our standard of review in an appeal from the grant or denial of PCRA relief requires us to determine whether the ruling of the PCRA court is supported by the record and is free from legal error." *Commonwealth v. Lesko*, 15 A.3d 345, 358 (Pa. 2011).

In order to obtain relief based on a claim of ineffectiveness, a PCRA petitioner must satisfy the performance and prejudice test

- 10 -

set forth in **Strickland v. Washington**, 466 U.S. 668, 687 . . . (1984). [I]n order to succeed on a claim of ineffectiveness, the petitioner must establish that: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) petitioner suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error. **Commonwealth v. Pierce**, . . . 527 A.2d 973, 975 (Pa. 1987). Additionally, we note, the Sixth Amendment right to counsel is recognized "not for its own sake," but because of the effect it has on the accused's right to a fair trial. [C]ounsel is presumed to have rendered effective assistance. Both the U.S. Supreme Court and this Court have made clear that a court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the **Strickland** test, the court may proceed to that element first.

**Id.** at 373-74 (some citations omitted).

### V. Ineffectiveness for Conceding Guilt to Simple Assault

In his first issue, Appellant avers the PCRA court erred in denying his claim that Trial Counsel was ineffective for conceding, during closing argument, that Appellant was guilty of simple assault. **See** N.T. Jury Trial at 117. Appellant relies on **McCoy v. Louisiana**, 138 S.Ct. 1500 (2018), which held the Sixth Amendment includes "the right to insist that counsel refrain from admitting guilt." Appellant's Brief at 12; **see McCoy**, 138 S.Ct. at 1505. Appellant contends Trial Counsel's conduct was "exactly the type of usurpation of a criminal defendant's constitutional rights to decide how to defend his case at trial," and was "a structural error requiring a new trial and did not necessitate a finding of prejudice." Appellant's Brief at 17, 19. Appellant further claims that even under the traditional **Strickland**/**Pierce** three-prong

test for ineffectiveness: (1) his underlying claim has arguable merit because Trial Counsel admitted he did not discuss with him a "strategy of conceding guilt to Simple Assault in his closing argument;"[9] (2) Trial Counsel "agreed that conceding guilt on Simple Assault contradicted Appellant's self-defense strategy;" and (3) Appellant was prejudiced "because but for counsel abandoning [him] and grossly undermining his credibility to the jury, there is a reasonable probability that the outcome of the trial would have been different." *Id.* at 17, 20-21. We disagree.

In *McCoy*, the defendant was charged with killing his estranged wife's mother, stepfather, and son. *McCoy*, 138 S.Ct. at 1505-06. McCoy "insistently maintained he was out of State at the time of the killings and that corrupt police killed the victims when a drug deal went wrong." *Id.* at 1506. McCoy's attorney

> concluded that the evidence . . . was overwhelming and that, absent a concession at the guilt stage that McCoy was the killer, a death sentence would be impossible to avoid at the penalty phase. McCoy . . . was "furious" when told, two weeks before trial . . . that [counsel] would concede McCoy's commission of the triple murders. McCoy told [his attorney] "not to make that concession" . . .; instead . . . McCoy pressed [his attorney] to pursue acquittal.

---

[9] We note that at the PCRA hearing, Trial Counsel responded he did not **recall** whether he discussed conceding guilt with Appellant. N.T., PCRA, 1/31/20, at 44.

*Id.* Both McCoy and his attorney requested the termination of counsel's representation, which the trial court denied, as trial was to commence two days later. *Id.*

In the opening statement at trial, defense counsel "told the jury there was 'no way reasonably possible' that they could . . . reach 'any other conclusion than . . . McCoy was the cause of [the victims'] deaths." *McCoy*, 138 S.Ct. at 1506. "McCoy testified in his own defense, maintaining his innocence and pressing an alibi difficult to fathom. In his closing argument, [defense counsel] reiterated that McCoy was the killer." *Id.* at 1507. The jury found McCoy guilty of first-degree murder on all three counts. *Id.* At the penalty phase, defense counsel again conceded McCoy committed these crimes, "but urged mercy in view of McCoy's 'serious mental and emotional issues.' The jury returned three death verdicts." *Id.* (record citations omitted).

The United States Supreme Court "granted certiorari in view of a division of opinion among state courts . . . on the question whether it is unconstitutional to allow defense counsel to concede guilt over the defendant's intransigent and unambiguous objection." *McCoy*, 138 S.Ct. at 1507. The Court reasoned that while the lawyer's province is trial management, the defendant retains autonomy to decide their defense will be to assert innocence. *Id.* at 1508. The Court reasoned:

> Violation of a defendant's Sixth Amendment-secured autonomy ranks as error of the kind our decisions have called "structural";

- 13 -

> when present, such an error is not subject to harmless-error review. . . .
>
> . . . [C]ounsel's admission of a client's guilt over the client's express objection is error structural in kind. Such an admission blocks the defendant's right to make the fundamental choices about his own defense.

*Id.* at 1511 (citations omitted). Once McCoy communicated his claim of innocence to his attorney, the attorney's proposed strategy — a concession of guilt in order to avoid the death penalty — "should have been off the table." *Id.* at 1512. The Court thus concluded: "Because the error was structural, a new trial is the required corrective." *Id.*

We disagree with Appellant's contention that Trial Counsel's sole statement in closing argument, that "at best it's simple assault," rises to the "structural error" at issue in *McCoy*. *See McCoy*, 138 S.Ct. at 1511. Here, Trial Counsel made one passing remark in a closing argument that focused on other arguments, namely that there was reasonable doubt as to whether Appellant had the specific intent to kill and commit aggravated assault. *See* N.T. Jury Trial at 113-18. Trial Counsel conducted trial consistently with Appellant's theory of self-defense, and indeed, the remainder of his closing argument — which Appellant ignores in his argument — advocated self-defense. This differs from *McCoy*, where defense counsel emphatically informed the jury at multiple stages of trial there was "no way reasonably possible" it could find McCoy did not commit the murders. *See McCoy*, 138 S.Ct. at 1506. Accordingly, we decline to apply the "structural error" analysis

in **McCoy**, and instead apply the traditional **Strickland**/**Pierce** test for ineffectiveness. **See Lesko**, 15 A.3d at 373-74.

Here, the PCRA court reasoned:

[T]he record, which includes the trial transcript, is clear that trial counsel argued that [Appellant] had been provoked by the victim and [Appellant] then reacted. . . . Trial counsel did not concede guilt but argued that 'at best, this rises to the level of simple assault.' It should be noted that the jury acquitted [Appellant] of the most serious charge of attempted murder.

PCRA Ct. Op. at 5-6.

We agree. Trial Counsel conducted trial and argued consistently with Appellant's claim of self-defense against the Victim's alleged sexual assault. Trial Counsel did not concede Appellant's guilt as to simple assault, but argued that even if the jury believed "this was . . . an altercation between two cellmates . . . at best it's simple assault." **See** N.T. Jury Trial at 117. Accordingly, Appellant's underlying claim lacks arguable merit. **See Lesko**, 15 A.3d at 373-74. Furthermore, we disagree with Appellant's assertion that Trial Counsel's reason for making the comment — to aim for conviction of a lesser offense — was not reasonable. **See** Appellant's Brief at 21. At the PCRA hearing, Trial Counsel testified he "believe[d] it was a legitimate trial strategy when [Appellant] was looking at attempted murder charges." N.T. PCRA at 44. As the PCRA court pointed out, the jury acquitted Appellant of the most serious charge. **See** PCRA Ct. Op. at 5-6. For the foregoing reasons, no relief is due on this issue.

## VI. Ineffectiveness for not Requesting Jury Instructions

In his second claim, Appellant avers Trial Counsel was ineffective for not requesting jury instructions on self-defense and justification. Appellant points out he testified at trial that he acted in self-defense, and Trial Counsel advocated the theory of self-defense in both opening and closing arguments. Appellant's Brief at 27-29. Appellant maintains that at the PCRA hearing, Trial Counsel "admitted [it] would have been sound trial strategy" to request the instructions, but offered no explanation why he did not. *Id.* at 23. Appellant challenges the PCRA court's reasoning for denying relief — that in rendering guilty verdicts, the jury made a credibility decision. *Id.* at 30. Appellant contends "self-defense instructions do not relate to credibility, but place a burden on the Commonwealth to prove beyond a reasonable doubt that Appellant had not acted in self-defense." *Id.* We conclude no relief is due.

"It is well settled that the decision whether to seek a jury instruction implicates a matter of trial strategy." *Lesko*, 15 A.3d at 401. Section 505(a) of the Pennsylvania Crimes Code provides for a defense of justification as follows: "The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S. § 505(a). Additionally:

> Before the issue of self-defense may be submitted to a jury for consideration, a valid claim of self-defense must be made out as a matter of law, and this determination must be made by the trial

judge. Such claim may consist of evidence from whatever source. . . .

[T]o establish the defense of self-defense it must be shown that[:] a) the slayer was free from fault in provoking or continuing the difficulty which resulted in the slaying; b) that the slayer must have reasonably believed that he was in imminent danger of death or great bodily harm, and that there was a necessity to use such force in order to save himself therefrom; and c) the slayer did not violate any duty to retreat or to avoid the danger.

***Commonwealth v. Hansley***, 24 A.3d 410, 420-21 (Pa. Super. 2011) (emphasis and citations omitted).

Here, the PCRA court reasoned:

This court found [Appellant] failed to meet his burden that the outcome of the proceedings would have been different if trial counsel had done any or all of the things [Appellant] believes that trial counsel should have done. It was on this basis that PCRA relief was denied. Even had trial counsel . . . requested the complicated instruction on justification, [Appellant] overlooks the fact that there was overwhelming evidence of guilt when his [trial testimony about the attack] are contrasted to the level of injury inflicted on the victim. . . .

* * *

[At the PCRA hearing,] trial counsel often did not recall specific arguments made at trial. However, the record, which includes the trial transcript, is clear that trial counsel argued that [Appellant] had been provoked by the victim and [Appellant] then reacted. While the justification instruction was not requested to be given to the jury, trial counsel did present a self-defense theory to the jury. The jury made credibility determinations and through their guilty verdicts showed they rejected the defense argument of self-defense.

PCRA Ct. Op. at 4, 5.

We disagree with Appellant that, in reviewing his claim of Trial Counsel's ineffectiveness for not requesting the jury instructions, the jury's ultimate

- 17 -

credibility determinations were not relevant. In establishing ineffectiveness, Appellant must show he suffered prejudice such that there is a reasonable probability that the result of his trial would have been different absent such error. **See Lesko**, 15 A.3d at 373. As Appellant emphasizes in his argument, he testified at trial he acted in self-defense to the Victim's sexual assault, and Trial Counsel advocated self-defense in opening and closing arguments. The PCRA court properly took into account the jury's discrediting this theory in finding Appellant guilty of aggravated and simple assault. We decline to find error in the PCRA court's conclusion that Appellant failed to show the outcome of his trial would have been different. **See Lesko**, 15 A.3d at 358, 373. Thus, no relief is due on this claim of ineffectiveness.

## VII. Ineffectiveness for Failing to Call Witnesses at Trial

In his third issue, Appellant asserts the PCRA court erred in denying relief on his claim that Trial Counsel was ineffective for failing to investigate and call to testify Shawn Cicero and Correction Officer Keith Eckenrode. He explains Cicero was an inmate on the same cell block at Berks County Prison at the time of the incident. "Although . . . Cicero did not see the altercation in the cell, he was sitting outside of his cell immediately after the doors were opened for recreation," and saw the Victim exit his "cell with a towel over his head and walk around the block . . . for . . . approximately five minutes prior to heading over to the guard booth, which was only 6-7 feet from Cicero's cell." Appellant's Brief at 32. Appellant maintains this evidence would have

contradicted the Victim's testimony that he immediately reported the assault to the officer on duty. *Id.* at 36. Appellant contends Cicero gave him a written statement on October 5, 2015, which we note was four months **after** trial. *See id.* at 33. Nevertheless, Appellant further claims he identified Cicero as a potential witness in a January 5, 2015, letter to Trial Counsel. *Id.* at 35.

Appellant also avers Officer Eckenrode authored a report of the incident, which stated: he was the first officer to respond to the incident; he transported the Victim to protective custody; and he handcuffed the Victim because he was uncooperative. Appellant's Brief at 34. Appellant reasons that evidence of the Victim's uncooperativeness would have cast doubt that he was a victim, and instead was the aggressor. *Id.* at 36. Appellant alleges Trial Counsel should have been aware of Officer Eckenrode because "the content of his testimony[ ] was identified in page 29 of the discovery." *Id.* at 35. Appellant states both individuals were available to testify. No relief is due.

This Court has stated:

In establishing whether defense counsel was ineffective for failing to call witnesses, [a petitioner] must . . . prove (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.[ ]

*Commonwealth v. Medina*, 209 A.3d 992, 998 (Pa. Super. 2019) (citation omitted).

Here, the PCRA court opined:

- 19 -

While [Appellant] mailed letters to trial counsel about potential witnesses, no specific witness was named, nor was contact information provided to counsel. [Appellant] did not provide this information to trial counsel in writing nor in their multiple meetings at various court appearances. This includes that [Appellant] never provided the name of Shawn Cicero. There is nothing to support the allegation that trial counsel was aware or should have been aware of this potential testimony to then make an assessment if this was a helpful witness.

While [Appellant's] trial counsel did not specifically remember reviewing the report of Corrections Officer Keith Eckenrote,[10] trial counsel was not ineffective for failing to call Corrections Officer Eckenrote about the victim needing to be handcuffed on his way to "PC". The court found trial counsel credible when he indicated that in his opinion that the report and testimony would have also yielded the revelation that jail administration found that the victim was not the aggressor. The Court found trial counsel credible when he testified that even in hindsight he would not have chosen to call him as a witness. This is a reasonable basis designed to effectuate [Appellant's] interests.

PCRA Ct. Op. at 4-5 (paragraph break added).

On appeal, Appellant does not address or refute the PCRA court's reasoning, but instead, presents the same argument already disposed of by that court. Our review of Appellant's January 5, 2015, letter corroborates the PCRA court's finding that he did not, in fact, identify any particular potential witness to Trial Counsel. *See* PCRA Ct. Op. at 4-5. Instead, the letter merely stated, "There are possible witnesses I'd like you to interview and some institutional reports that may be helpful as well." N.T. PCRA, Appellant's Exh.

---

[10] While Appellant spells the corrections officer's name as "Eckenrode," the PCRA court spelled it as "Eckenrote."

2, Letter from Appellant to Trial Counsel, 1/5/15. Appellant's own argument is that Cicero provided a written statement on October 5, 2015, four months **after** trial. On appeal, Appellant does not explain when he learned Cicero could be a potential witness; he also does not provide any explanation whether Cicero was available and willing to testify at the time of trial. ***See Medina***, 209 A.3d at 998.

Additionally, with respect to Officer Eckenrode, Appellant does not refute the court's crediting Trial Counsel's testimony that introduction of this witness could have led to the damaging evidence that the prison found the Victim was not the aggressor. ***See*** PCRA Ct. Op. at 5. Thus, Appellant has not shown Trial Counsel lacked a reasonable basis for not calling Officer Eckenrode as a witness. ***See Lesko***, 15 A.3d at 373-74.

## VIII.  Claims of Prosecutorial Misconduct

In his fourth issue, Appellant avers the PCRA court erred in denying relief on his various claims of prosecutorial misconduct at trial. Specifically, Appellant asserts the Commonwealth improperly: (1) elicited inaccurate testimony from Sergeant Krulac about the date of the shank incident between the Victim and the inmate Bracero; (2) failed to correct the inaccurate date; and (3) relied on the inaccurate date to argue Appellant was retaliating against the Victim for snitching on Bacero. Appellant's Brief at 49. Appellant maintains the shank was discovered in Bacero's cell on June 10, 2014, and not "a day or two" before the June 27th incident between Appellant and the

Victim.  ***Id.*** at 51.  We agree with the PCRA court that this issue is waived for PCRA review.

To be eligible for relief under the PCRA, the petitioner must show "the allegation of error has not been previously litigated or waived."  42 Pa.C.S. § 9543(a)(3).  "For purposes of this subchapter, an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding."  42 Pa.C.S. § 9544(b).

Here, the PCRA court found Appellant's claims of prosecutorial misconduct could have been raised on direct appeal and are thus waived from PCRA review pursuant to Section 9544(b).  PCRA Ct. Op. at 6.  We note Appellant does not address this reasoning.  We agree with the court these claims are waived.

## IX.  Conclusion

As we determine none of Appellant's claims merit relief, we affirm the PCRA court's order denying his petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 06/23/2021